Railroad v. Hill.

CHOCTAW, OKLAHOMA & GULF RAILROAD CO. *v.* JOHN
W. HILL.

*(Jackson.* April Term, 1903.)

1. **RAILROADS.** Ejection of discharged newsboy from train
without demanding fare, and refusing to accept fare, when
tendered, wrongful, when. Case in judgment.

Where a newsboy, who was employed by a railroad news com-
pany, and was, by contract with the railroad company, to be
transported by it, without the payment of fare, and was to be
subject to its orders, and amenable to its rules and regulations,
in the same manner as its own servants, violated one of its
rules, the penalty for which was discharge from its service,
and for which he was discharged, his right to be transported
without payment of fare thereupon ceased, but he did not
thereby forfeit his right to remain upon the train, and proceed
as a passenger upon the payment of fare. Under such circum-
stances, it became the duty of the conductor to demand pay-
ment of fare, and upon the failure or refusal to pay, he could
then have rightfully ejected such discharged· newsboy, but he
was ejected from the train without being given an opportunity
to pay his fare. After this ejection, he subsequently returned
and offered to pay his fare to a point to which he desired to go,
but was again ejected. *Thus was a previous situation*

*Held.* Both ejections were wrongful. *(Post, pp.* 400-405.)

Cases cited, approved and distinguished: Railroad v. Harris, 9
Lea, 180, 186-187; Hibbard v. Railroad, 15 N. Y., 455; State v.
Campbell, 32 N. J. Law, 309; Railroad v. Wright, 68 Ind., 586.

Railroad v. Hill.

2. **SAME. Same. Wrongfully ejected newsboy may return and tender fare entitling him to passage, when.**

The rule that, when a person upon a train, claiming the rights of a passenger, has forfeited or failed to perfect these rights by refusal to pay fare, and the train has been stopped, and the train crew are in the act of putting him off the train, such person can not restore his original status, and acquire and perfect his rights as a passenger, by then offering to pay the legal fare. is not applicable to this case, as appears in the foregoing headnote, because the reason of the rule does not exist, as the train was not stopped in this case to put the newsboy off, but it was already standing at a station, and as he had not refused to pay his fare, and thereby breached the contract between the passenger and carrier. (*Post, pp.* 403-404.)

Cases cited, approved and distinguished: Railroad v. Harris, 9 Lea, 180, 186-187; Hibbard v. Railroad, 15 N. Y., 455; State v. Campbell, 32 N. J. Law, 309; Railroad v. Wright, 68 Ind., 586.

3. **SAME. Same. Same. Instruction to jury is not erroneous; loss of time; physical suffering; damages in discretion of jury.**

In an action against a railroad company for wrongful ejection from its train, an instruction to the jury as follows: "If you find for the plaintiff, under the foregoing instruction you may consider his loss of goods, if any, his loss of time, his mental and physical suffering, if any, his humiliation of feeling, and give what, in your sound discretion, would be a fair and just compensation," contains no error under the facts of this case, because (1) if there was no evidence of the value of the time lost, then under the well-known rule the error is innocuous, where the court is unable to see that any injury resulted; (2) the evidence that plaintiff was jerked off the car was sufficient to justify the instruction authorizing damages for physical suffering, and (3) the instruction to the jury to give what, in their sound discretion, would be a fair and just compensation, was

said with reference to the testimony, to which the jury were referred, and could not have been misunderstood by them. (*Post, pp.* 405-406.)

Case cited, approved and distinguished: Girdner v. Taylor, 6 Heisk., 244, 246.

**4. SAME.** Same. Same. Charge upon punitive damages that is not erroneous.

In an action against a railroad company for a wrongful ejection from its train, an instruction to the jury that "Whenever the element of malice or oppression or a reckless disregard of the rights of others, enters into a transaction, and when the act is done in the strict line of the duty of the conductor, but done under a state of facts not justifying the act done, and in a wrongful, or perhaps careless manner, to the injury of the plaintiff, then the law blends the interests of society with those of the aggrieved individual, and authorizes the jury in its discretion to give exemplary damages. These are allowed in addition to damages for compensation or actual damages, to punish the offender, and deter others from the repetition of like offenses," is not a model of correct expression, but there is no reversible error in it. (*Post, pp.* 406-407.)

**5. SAME.** Same. Same. Same. Evidence justifying charge upon punitive damages.

In an action against a railroad company for a wrongful ejection from its train, a charge upon punitive damages is authorized by evidence that the plaintiff was forcibly jerked from the train, and then held and restrained of his liberty by the railroad company's servants. (*Post, p.* 407.)

Cases cited and approved: Railroad v. Lea, 90 Tenn., 574; American Lead Pencil Company v. Davis, 108 Tenn., 257.

**6. SAME.** Same. Same. Same. Charge as to line of duty of conductor not erroneous.

By the language, "and when the act is done in the strict line of duty of the conductor," used in the charge as shown in the

Railroad v. Hill.

fourth headnote, in the connection in which it was used, the circuit judge intended to indicate to the jury (and correctly) that the act or acts complained of must have been, not of a character lying outside of the scope of the employment of the conductor as a servant of the company, but of a character falling under that employment, but not justified by the facts of the particular case, and moreover was done in a malicious or oppressive way, or in reckless disregard of the rights of others. (*Post, pp.* 407-408.)

Case cited and approved: Railroad v. Garrett, 8 Lea, 438, 449.

7. **SAME. Same. Same. Same. Charge using word "careless" for the word "reckless" not erroneous, when.**

The charge contained in the fourth headnote is not objectionable because of the expression "or perhaps careless manner," because, while the word "careless" was not strictly speaking a correct word to express the meaning intended, still it could not have misled the jury, for, in the connection in which it was used, it must have conveyed to their minds the meaning carried by the word "reckless." (*Post, pp.* 408-409.)

Cases cited, approved and distinguished: Railroad Company v. Starnes, 9 Heisk., 53; Railroad v. Garrett, 8 Lea, 438, 449.

8. **SAME. Same. Same. Verdict of $250.00 for wrongful ejection from train is not excessive, when.**

In an action against a railroad company by a newsboy for a wrongful ejection from its train, where it appears that the plaintiff was forcibly jerked from the train, and thereafter held and restrained of his liberty by the company's servants, and his stock in trade of the value of twelve dollars was lost and destroyed in consequence, a verdict for two hundred and fifty dollars is not excessive. (*Post, pp.* 400, 409-410.)

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby County.—J. P. Young, Judge.

Wright, Peters & Wright, for Railroad Company.

John E. Bell, for Hill.

Mr. Justice Neil delivered the opinion of the Court.

This action was brought in the court below by the defendant in error to recover damages for his wrongful ejection from one of the trains of the plaintiff in error. There was a verdict for $250, on which the court below entered judgment. A motion for new trial was made and overruled in that court, and thereupon the plaintiff in error prayed for and obtained an appeal to this court, and has assigned errors.

There was testimony introduced in the court below tending to show the following facts, viz.: That defendant in error was a newsboy on plaintiff in error's train, in the employ of the Van Noy News Company, but by contract between the latter and the railway company, likewise with the consent of defendant in error, he was subject to the orders of the railway company, and amenable to its rules and regulations just as any servant of the latter, and was to be transported back and forth without payment of fare; that on the 24th of August, 1902, while defendant in error was in this service on one of his accustomed trips, and while the train was standing at Oklahoma City, he was detected in the violation of a rule of the railway company, which, on pain of dis-

charge from the service of the company, forbade its servants to drink beer or spirits, or to have the same in possession; the defendant in error having been seen drinking beer at a restaurant in Oklahoma City, and having purchased and carried upon his train a pint bottle of whisky for the conductor; that upon being so detected he was ordered by S. H. Barnes, the superintendent of that division of the road, to leave the train; that he threw the bottle of whisky out of the window of the car he was then in, and asked to be allowed to remain upon the train and proceed to Memphis, saying that he was willing to pay fare; the superintendent denied this request, and upon his failure to go ordered the conductor to remove him from the train; that the conductor did so; that he in a very short time returned to the train, going through the ladies' car, and thence into the car in which he had previously been traveling, and in which his goods were, consisting of newspapers, fruit, tobacco, and confections; that he took off his cap, but still kept on the rest of his uniform; that he was again ordered from the train, but in response said he wished to pay his fare, and go at least to the next station, Shawnee Town, so that he could have time to get his goods together, that they might not be lost; that he tendered at this time $5, but the conductor refused to receive the money; that the fare to Shawnee Town was only $1.25; that during the same conversation in which he tendered the $5 he also told the conductor he wished to go through

to Memphis; that he knew that the fare to Memphis. was more than $5; that upon the conductor's refusal to accept the fare he was again removed from the train, and in accomplishing this the plaintiff in error's employees jerked him from the car; that after he had been so removed he was held by the servants of the company, and forcibly restrained from again returning to the train, and was so restrained until the train resumed its journey; that Oklahoma City was one of the regular stopping places of the train; that the usual stop was 25 minutes, but on the occasion in question the train had been delayed an hour, awaiting the arrival of another train.

There was evidence tending to show that the fare from Oklahoma City to Memphis was $15.12, and that defendant in error had in his pocket at the time he was ejected from the train the sum of $18. There is no testimony showing whether defendant in error knew the exact fare or not; nor is there any evidence showing that the conductor informed defendant in error of the amount, or that he demanded it, and from the attending circumstances we infer that he did neither.

The defendant in error stayed in Oklahoma City until the next day at 10 o'clock, when he boarded a train of the plaintiff in error, and proceeded to Memphis, paying his fare as a passenger.

By reason of his ejection from the train, defendant in error's goods, left upon the train, were wasted or lost, to the value of about $12, for which he

Railroad v. Hill.

was compelled to account to the Van Noy News Company.

Upon these facts it is insisted, first, that, inasmuch as defendant in error was clearly in the wrong, in that he had violated a rule of the company for which the company had the right to discharge him from the service, and (as plaintiff in error insists) eject him from the trains, and for which he was so discharged and ejected, he had no right to again board the train, and then to attempt to acquire and maintain the status of a passenger by offering to pay fare.   Counsel endeavor to support this contention by reference to those cases which hold that when a person upon a train, claiming the rights of a passenger, has forfeited or failed to perfect these rights by a refusal to pay fare, and the train has been stopped, and the train crew are in the act of putting him off the train, such person cannot restore his original status, and acquire and perfect his rights as a passenger, by then offering to pay the legal fare.   *Railroad* v. *Harris,* 9 Lea, 180, 186, 187, 42 Am. Rep., 668; *Hibbard* v. *N. Y. & E. R. Co.,* 15 N. Y., 455; *State* v. *Campbell,* 32 N. J. Law, 309; *Hutchinson on Carriers,* sec. 591.

The reason assigned in support of the rule is that, if one passenger might, by his unjustifiable conduct, delay the train to put him off, another might do the same thing, and thus the utmost irregularity in the running of the trains be produced, jeopardizing the safety of the company's property, and the lives of all on board.   9

Lea, 186. But the reason of the rule would not exist, and hence the rule itself would not obtain, when the train is stopped at a regular station, as is shown in the present case. *Toledo, W. & W. R. Co.* v. *Wright,* 68 Ind., 586, 34 Am. Rep., 277.

Moreover, cases of the class referred to do not furnish a fair analogy for the case we have before us. While it is true that the company had the right to discharge the defendant in error because of his violation of the rules, and, upon his failure to pay fare, also to eject him from the train, it did not have the right to eject him if he was willing and offered to pay fare to any station ahead. One reason given in many of the cases for the right of ejection even though one offers to pay fare after the ejection is begun is that the person in question has, by his previous conduct, broken the contract implied between him and the company, upon his entering the train, that it would carry him to his destination upon his paying the fare, by his refusal to pay fare in the first instance, and that, thus having broken the contract on his part, he has no status under it, and is in no position to tender a new contract, the company being in the very act of enforcing the right accrued to it upon the breach. The case, however, is different in respect of an employee being carried as this one was without payment of fare, under the terms of his service.

Upon the discharge of such employee, it is true, his right to be transported without payment of fare would cease, but he would not forfeit his right to remain upon

the train, and to proceed as a passenger, upon the pay-
ment of fare. The duty of the conductor, under such
circumstances, would be to demand payment of fare,
and upon failure or refusal to pay, he would then have
the right to eject such discharged employee. So, in the
present case, the company was in the wrong in both the
first and the second ejection—in the first, in that the
conductor did not demand fare of the defendant in error
to his destination, which destination was known to the
conductor, or give him the option of paying fare to any
other point between Oklahoma City and Memphis that
he might desire, or of leaving the train; in the second,
in that he removed the defendant in error, notwithstand-
ing the fact that he tendered fare to Shawnee Town, and
subsequently, before his removal, manifested a purpose
to go through to Memphis, and the conductor removed
him from the train without making a demand for his
fare.

We need not consider what the respective rights of
the company and of the defendant in error would have
been if the conductor had demanded the fare, or the de-
fendant in error had refused, or the train had been
stopped for the purpose of putting him off, and he had
then tendered the fare. No such case appears in the
record.

It is insisted that the court below erred in giving the
following instruction to the jury, viz.: "If you find for
the plaintiff under the foregoing instruction, you may
consider his loss of goods, if any, his loss of time, his

mental and physical suffering, if any, his humiliation of feeling, and give what, in your sound discretion, would be a fair and just compensation."

We do not think there was any error in this instruction. It is said that there was no evidence of the value of the time lost. If so, then under the well-known rule the error will be held innocuous, unless the court can see that some injury resulted. In the present case we are unable to see that any injury resulted.

It is said that there was no evidence to show physical suffering. There was, however, some evidence upon this subject, though slight, in the testimony of the defendant in error that he was jerked off the car.

It is said that the instruction was erroneous, in that the jury were told that they could give as damages what, in their sound discretion, would be fair and just compensation; and that this was contrary to the rule laid down in *Girdner* v. *Taylor*, 6 Heisk., 244, 246. In that case, however, it appeared that the circuit judge had instructed the jury that they could allow any amount of damages they should see proper, without directing their attention to the testimony, or indicating that they should be guided by it. In the present case the jury were referred to the testimony, and what was said in the instruction in question was said with reference to that testimony, and could not have been misunderstood.

It is insisted that the circuit judge erred in giving the following instruction upon the subject of punitive damages, viz: "Whenever the element of malice or op-

Railroad v. Hill.

pression, or a reckless disregard of the rights of others, enters into a transaction, and when the act is done in the strict line of duty of the conductor, but done under a state of facts not justifying the act done, and in a wrongful, or perhaps careless, manner, to the injury of the plaintiff, then the law blends the interests of society with those of the aggrieved individual, and authorizes the jury in its discretion to give exemplary damages. These are allowed in addition to damages for compensation or actual damages, to punish the offender, and deter others from the repetition of like offenses."

We do not consider this instruction as a model of correct expression, but there is no reversible error in it.

It is said there was no testimony to justify the court in giving a charge upon the subject of punitive damages, and that, in the absence of such testimony, no charge upon that subject should have been given; citing *American Lead Pencil Co.* v. *Davis,* 108 Tenn., 257, 66 S. W., 1129; *Railway* v. *Lea,* 90 Tenn., 574, 18 S. W., 268. But there is much evidence in the fact that the defendant in error was forcibly jerked from the train, and was then held and restrained of his liberty by the company's servants.

Objection is taken to the language, "and when the act is done in the strict line of duty of the conductor." By this language, in the connection in which it was used, the circuit judge intended to indicate to the jury (and correctly) that the act or acts complained of must have been, not of a character lying outside of the scope of the

employment of the conductor as a servant of the company, but of a character falling under that employment, but not justified by the facts of the particular case; and, moreover, was done in a malicious or oppressive way, or in reckless disregard of the rights of others. *Railroad* v. *Garrett*, 8 Lea, 438, 449, 41 Am. Rep., 640.

Objection is taken to the expression "or perhaps careless manner." This expression together with the preceding one, was copied by his honor from the opinion of this court in the case of *Railroad* v. *Garrett*, supra.

The whole passage is as follows: "There is no class of cases where the doctrine of exemplary damages can be more beneficially applied than in the case of railroad corporations in their capacity as common carriers of passengers. We see no reason to go over the cases in other States to find support for this view. It is sound, in our judgment, and needs no further discussion. It is proper to say that the case of *Nashville & Chattanooga Railroad* v. *Starnes*, 9 Heisk., 53, 24 Am. Rep., 296, did not intend to announce any contrary general doctrine, and does not, when considered in connection with the facts. So far from limiting the liability of a railroad company for the acts of its servants, when an injury is done in the performance of the duties of their positions, it was extended in that case to the act of the servant in wantonly and for mischievous purposes using the engine of the company to alarm horses in a wagon (a proposition the writer of the opinion thinks a very doubtful one). In a case like that, however, it was said

Railroad v. Hill.

the company should not be liable for vindictive damages, because, says the judge: "The act complained of was manifestly done without the defendant's knowledge or consent, and was the willful and unauthorized act of the servant alone.' Whether that be correct or not in reference to the facts of that case, we need not now determine, but it has no application whatever to the case before us, when the act was done in the strict line of the duty of the conductor, but was done under a state of facts not justifying the act done, and in a wrongful, or perhaps careless, manner, to the injury of the plaintiff."

There can be no doubt that the word "careless" here was a misprint for the word "reckless." The facts recited in the opinion in respect of which the passage above quoted was used show that the word "careless" was wholly inappropriate, and that the judge writing the opinion intended to use, and no doubt did use, the word "reckless."

The word "careless," therefore, appearing in the charge in question, was not, strictly speaking, a correct word to express the meaning intended; but it could not have misled the jury, because in the connection in which it was used it must have conveyed to their minds the meaning carried by the word "reckless;" not the idea of negligent indifference, but without care of consequences or for the rights of the person ejected.

It is next insisted that the verdict was excessive. We do not think so.

Railroad v. Hill.

We have thus disposed of the substance of all of the errors assigned, except the third, concerning the exclusion of certain evidence. We think this testimony was so clearly incompetent that we need not extend this opinion by discussing it here.

It results that the judgment of the court below must be affirmed.