LOUISVILLE & NASHVILLE RAILROAD COMPANY v. A. D. HADLEY AND WIFE, MRS. A. D. HADLEY.

Middle Section.    May 3, 1930.

Petition for Certiorari denied by Supreme Court, July 19, 1930.

Keeble, Seay, Stockell & Keeble, of Nashville, for plaintiff in error, Railroad.

Bailey & Davies, of Nashville, for defendants in error, Hadleys.

CROWNOVER, J.  This was an action by Mrs. Hadley to recover damages for personal injuries suffered as a result of gross negligence

in ejecting her from a passenger train in the rain on a high fill between stations in North Nashville. She was the wife of an employee of the Nashville, Chattanooga & St. Louis Railway, which railway was connected with the defendant Louisville & Nashville Railroad Company, and was attempting to ride on a free pass from Nashville to Madisonville, Kentucky.

She averred in her declaration that the defendant railroad was guilty of wilful, wanton and gross negligence, and sought to recover punitive or vindictive damages in addition to compensatory damages.

There were two actions, one of the husband, A. D. Hadley, against the defendant railroad, and the other, A. D. Hadley and wife against the defendant railroad. By agreement the cases were tried together, but only Mrs. Hadley's case was appealed in error and is before this court.

This case was tried by the judge and a jury. At the conclusion of all the evidence defendant moved for a directed verdict, which motion was overruled, and the jury returned a verdict of $1,000 in favor of Mrs. Hadley.

Defendant's motion for a new trial having been overruled, it has appealed in error to this court and has assigned five errors, which are, in substance, that the court erred:

(1) In overruling defendant's motion for a directed verdict, as there was no evidence to support a verdict in favor of the plaintiff.

(2) The verdict was excessive.

(3) The court erred in charging the jury that if it believed the plaintiff's theory of the case, as detailed, the defendant was guilty of gross negligence and plaintiff was entitled to recover damages.

The facts necessary to be stated are, that Mrs. A. D. Hadley, a resident of Nashville, Tenn., was the wife of a laborer employed by the N., C. & St. L. Ry., which railway was connected with the defendant L. & N. R. R. Co. In February, 1922, her husband, A. D. Hadley, asked the N., C. & St. L. Ry., to obtain for his wife, Mrs. Hadley, from the defendant L. & N. R. R. Co., a free pass from Nashville, Tenn., to Madisonville, Kentucky. The pass was issued and delivered to him for her, but through an error of the railroad company the pass was issued so as to read "from Nashville, Tenn., to Madison, Ky.," instead of to Madisonville, Ky. There is no station "Madison, Ky.," on the L. & N. Railroad. On the back of the pass was printed.:

> "The person accepting and using it thereby assumes all risk of accident to person or property, states that he or she is not prohibited by law from receiving free transportation, and agrees to make only such use of the pass as is permitted by Federal and State laws.

"I accept the above conditions."

This stipulation was signed by Mrs. Hadley.

Mrs. Hadley noticed that the pass read, "to Madison, Ky.," when it should have read "Madisonville, Ky." She consulted the information clerk at the ticket office at the Union Station and he assured her that the pass would be accepted for Madisonville, Ky.

On Sunday morning, February 19, 1922, at about 7:30 in the morning, Mrs. Hadley, accompanied by her husband, went to the Union Station, presented the pass to the gate-keeper and called his attention to the fact that it read "to Madison, Ky." He informed her that it would be accepted for Madisonville, and admitted her through the gate. He told her that Madison was the Post Office and that Madisonville was the railroad station, and that they were on opposite sides of the track.

Mrs. Hadley had been in bad health for months. She was then convalescing from influenza, and was leaving for the country on account of her health. It was cold and threatening to rain. Her husband went to the station with her, carrying her two large suit cases, and put her on the train and returned home.

As the train was leaving the station the conductor began taking up the tickets. Shortly he reached Mrs. Hadley, who gave him her pass and he read it and advised her that it was defective and told her that she could not travel on it to Madisonville, Ky. Mrs. Hadley then made a full explanation of the facts, that the pass had been requested for Madisonville, but through error had been issued by the railroad to Madison, and that she had consulted the ticket office and gate keeper of the railroad, who advised her that it would be accepted and that she could travel on it to Madisonville, Ky. He informed her that she would either have to pay her fare or get off the train. She did not have sufficient money to pay her fare, so the conductor stopped the train and told her to get off. She was put off between Fifth and Fourth avenues, in the railroad yards, on an embankment about forty feet high. It was raining and she had no umbrella. Her two large grips were too heavy for her strength, but there was no one to carry them, so she was compelled to carry them. The conductor directed her to follow the track back to the station. She followed the tracks back until she came to a high trestle, when she was forced to climb down the steep embankment and walk to Fourth avenue and Joe Johnson street for a street car. When she got off the street car she had to walk one and a half blocks in the rain, carrying her grips.

She was put off the passenger train a short distance before it reached Link's depot, where she could have safely alighted.

As a result of being ejected, she had a chill after she reached home, became sick and in two or three days had a miscarriage, for all of which she brought this suit.

There was a conflict between her testimony and that of the railroad as to where she was ejected. She contended that she was ejected between Fifth and Fourth avenues before they reached Link's depot, whereas the railroad employees testified that she was ejected a few hundred feet beyond Link's depot and was told that she could return to that station. But the jury having found the issues in favor of the plaintiff, we are bound by her testimony.

It was contended by the defendant railroad that Mrs. Hadley was traveling on a free pass that exempted the railroad company from negligence, the same having been issued to her as a gratuity under the Hepburn Act of June 26, 1906, chap. 3591, sec. 1 (34 Stat. at Large, 584, U. S. Comp. Stat Supp., 1911, p. 1288), as wife of an employee, and that a stipulation in a free pass, to be used in interstate transportation, exempting the carrier from liability for injury occasioned by itself or its employees, is valid and binding on the passenger. Kansas City Sou. Ry. Co. v. Van Zant, 260 U. S., 459, 67 L. Ed., 348; Charleston & W. C. R. Co. v. Thompson, 234 U. S., 576, 58 L. Ed., 1476; Boering v. Chesapeake Beach R. Co., 193 U. S., 442, 48 L. Ed., 742; Northern P. R. Co. v. Adams, 192 U. S., 440, 48 L. Ed., 513.

But the plaintiff averred wilful, wanton and gross negligence, and insisted that such clauses in passes did not exempt the railroad company from liability where the railroad was guilty of wilful, wanton or gross negligence.

The judge charged the jury that there could be no recovery for ordinary negligence in this case, but there could be a recovery for "gross, wilful and wanton negligence," and submitted to the jury that if the jury believed complainant's theory, as detailed, the defendant was guilty of gross negligence and plaintiff should recover. The jury found the defendant guilty of gross negligence and returned a verdict of $1,000 for her.

"A carrier is liable to a person traveling on a pass who is wilfully or wantonly injured by the carrier's employees, notwithstanding a stipulation in such pass releasing the carrier from liability for negligence." New York Central R. Co. v. Mohney, 252 U. S., 152, 64 L. Ed., 502.

It was held by the Supreme Court of the United States in the case of the Philadelphia & Reading R. R. Co. v. Derby, 14 Howard, 468, 14 L. Ed., 502:

"This duty does not result alone from the consideration paid for the service. It is imposed by law, even where the service is gratuitous. 'The confidence induced by undertaking any

service for another, is a sufficient legal consideration to create a duty in the performance of it.' (See Coggs v. Bernard, and cases cited in 1 Smith's Leading Cases, 95.) It is true, a distinction has been taken, in some cases, between simple negligence, and great or gross negligence; and it is said, that one who acts gratuitously is liable only for the latter. But this case does not call upon us to define the difference (if it be capable of definition), as the verdict has found this to be a case of gross negligence.''

It was said by the United States Supreme Court in the case of The Steamboat New World et al. v. King, 16 Howard, 469, 14 L. Ed., 1019:

''How much care will, in a given case, relieve a party from the imputation of gross negligence, or what omission will amount to the charge, is necessarily a question of fact, depending on a great variety of circumstances which the law cannot exactly define.''

The Supreme Court of Tennessee, while conceding the right to make such exemption in cases of ordinary negligence, has refused to apply this principle in cases of wilful, wanton or gross negligence. See Marshall v. Nashville Ry. & Lt. Co., 118 Tenn., 254, 101 S. W., 419; Memphis St. Ry. Co. v. Caviness, 127 Tenn., 571, 157 S. W., 63.

But this case is governed by Federal laws, as it involves a pass for interstate transportation. Kansas City Sou. Ry. Co. v. Van Zant, supra; Williamson v. Seaboard Air Line Ry., 136 Va., 626, 263 U. S., 710, 68 L. Ed., 518; Bush v. Bremner, 36 Fed. (2d.), 189-190.

A written or printed ticket is not always the contract between the parties; and it is the duty of conductors to listen to the reasonable explanations of passengers. N., C. & St. L. Ry. Co. v. Read, 4 Higgins, 98.

The railroad owes a duty to protect trespassers or licensees as well as passengers, from wilful and wanton misconduct of its agents. Sou. Pac. R. R. Co. v. Schuyler, 227 U. S., 601, 57 L. Ed., 662; R. R. v. Maucher, 248 U. S., 359, 63 L. Ed., 294.

''It is a well established rule that however proper the ejection of a person from the carrier's vehicle may be, the carrier must exercise such right at a place that is reasonably free from danger, taking into consideration the surrounding circumstances and the condition of the person ejected; and whether the place at which a person was ejected was a proper one usually is a question of fact for the jury.'' 5 R. C. L., 132, sec. 759.

''In a great number of cases in which recovery has been sought against carriers for wrongful ejection, exemplary damages have been allowed where it has been shown that the act was

accompanied with malice, wantonness, or gross negligence.'' R. R. v. Hill, 110 Tenn., 396, 75 S. W., 963; Nashville St. Ry. Co. v. Griffin, 104 Tenn., 81, 57 S. W., 153; L., N. etc., Ry. Co. v. Fleming, 14 Lea, 128; L. & N. R. R. v. Garrett, 8 Lea, 438.

Ejectment, when justified, must be at a point where person ejected will not be subject to peril or injury. 10 C. J., 754, sec. 1192, and cases cited; Gallena v. Hot Springs Co., 13 Fed., 116; R. R. Co. v. Valey, 173 Ala., 611; R. R. Co. v. Johnson, 108 Ala., 62.

Hence, it will be seen by a review of the foregoing facts and authorities that the trial judge was correct in overruling defendant's motion for a directed verdict, and there is material evidence to sustain the verdict on the question of gross negligence.

"Gross negligence is such entire want of care as would raise presumption of a conscious indifference to consequences; the mental attitude being one of indifference to injurious consequences, conscious recklessness of rights of others.''

"Wanton negligence is heedless and reckless disregard for another's rights with consciousness that act or omission to act may result in injury to another.'' See Craig v. Stagner, 19 S. W. (2d.), 234; Tennessee Central Ry. Co. v. Ledbetter, 19 S. W. (2d.), 258.

It results that these two assignments of errors must be overruled.

We are also of the opinion that assignments of errors numbers three and four as to the excessiveness of the verdict are not well made. The proof is uncontroverted that the plaintiff had a chill on coming home, suffered a relapse of influenza, had a hemorrhage and a miscarriage within a few days thereafter, for which we think $1,000 is not excessive.

However, it is insisted that the proof is not sufficient to show that all of her suffering and trouble was the result of being ejected from this train, and that the testimony of laymen to this effect is insufficient, and as her physician did not testify therefore the jury was not warranted in attributing all of these results to being ejected from the train.

The plaintiff, her husband, her mother-in-law and others in the home testified as to all the facts and the suffering that she underwent, hence we think that after detailing the facts the witnesses had a right to state that they were the result of the occurrence.

The establishment of such facts need not necessarily be confined to expert testimony.

"A witness may state simple inferences drawn by him from his own conscious subjective sensations, as to his physical condition. Thus a witness has been allowed to state his physical symptoms; the pain which he suffered after an injury, how he suffered, and the extent of his suffering, by reason of a per-

sonal injury; the effect of injuries on his health, or of sickness or injuries on his ability to work; that after an accident he suffered from symptoms which he did not have prior to the accident; that he was troubled with nervousness; that he suffered from headaches in consequence of an injury to his back, etc." 22 C. J., 618, sec. 710. .

And it has also been held that a witness may testify as to the physical condition of another person, where the witness details facts upon which he bases his judgment. 22 C. J., 618-622, sec. 711; Norton v. Moore, 3 Head, 480. And that it is not necessary to resort to expert testimony to prove such facts. Reed v. Rosenthal (Ore.), 276 Pac., 684, 63 A. L. R., 1071.

The fifth assignment, to the effect that the court erred in charging the jury that if it believed the plaintiff's theory of the case as to the issuance of the pass and the ejection of the plaintiff under the circumstances as detailed, the defendant was guilty of gross negligence and was liable in damages to the plaintiff, is not well taken. The court merely stated that if the jury believed the facts as testified to by the plaintiff they would constitute gross negligence. In all cases of gross negligence it is the duty of the court to define to the jury what constitutes gross negligence, and the court may tell the jury that if they believe certain statements as testified to by plaintiff's witnesses the plaintiff is entitled to recover.

It results that all of the assignments of errors must be overruled and the judgment of the lower court must be affirmed. A judgment will be entered in this court for $1,000 with interest thereon from May 22, 1929, to the present, together with the cost of the cause including the cost of appeal, in favor of the plaintiff, Mrs. A. D. Hadley, and against the defendant railroad company, for all of which let execution issue.

Faw, P. J., and DeWitt, J., concur.