## BEAUPRE v. NOYES.

ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 160. Argued and submitted January 23, 1891. — Decided February 2, 1891.

Although a case from the highest court of a State may involve a Federal question, yet, if that court proceeds upon another and distinct ground, not involving a Federal question, and sufficient in itself to maintain the final judgment, without reference to the Federal question involved, its judgment will be affirmed here.

This court is without authority to review an order denying a motion for a new trial.

THE case, as stated by the court, was as follows:

This action was brought in the District Court of Ramsey County, Minnesota, by the defendants in error, partners as Noyes Bros. & Cutler, against the plaintiffs in error, partners as Beaupré, Keogh & Co., each firm doing business in the city of St. Paul.

The complaint alleges that Charles Young, engaged in geıeral mercantile business at Forsyth, in Custer County, Moıtana, being insolvent, and indebted to many persons, — among others, to the plaintiffs in the sum of $425.71, and to the defendants in the sum of $1080.43, — executed, on the 27th of April, 1883, a deed of assignment for the benefit of his creditors, whereby, and for the purpose of making equal provision for all of them, he transferred to C. A. Winchester his property, real and personal, in trust for his creditors; that Winchester accepted the trust, qualified as assignee, took actual possession of the property assigned, proceeded in due form to execute the trust, and has ever since been such assignee;

that the deed was duly recorded May 1, 1883, in the proper office; that the property so transferred was worth $6000, and consisted, among other things, of a stock of general merchandise, books, book accounts, etc.; that of said assignment the plaintiffs were notified by Winchester as soon as he had taken possession of the property under the deed of assignment, and defendants assented thereto; that afterwards, on and between May 1, 1883 and January 2, 1884, Winchester, as such assignee, and not otherwise, with the consent of all the creditors, especially of the defendants, carried on business at Forsyth, purchasing large amounts of goods and merchandise as such assignee, and placing the same in the store building, previously occupied by Young at Forsyth, with the goods transferred by said deed of assignment; that Winchester continued until January 2, 1884, to sell both the original stock and the new goods so purchased, and applied the proceeds thereof, not required to meet the expenses of the assignment, to the payment as fast as possible of Young's creditors and of the debts incurred by the assignee; that the new goods were obtained solely to enable the assignee to dispose of all the property to the best advantage and were paid for out of the proceeds of the trust property as well as from the proceeds of the new goods purchased; that the defendants were paid as well on account of their claims against Young as for the goods purchased from them by the assignee, out of the proceeds of both the old and new stock; and that the defendants knew of all these matters and consented thereto.

It also alleges that, on the 2d of January, 1884, the defendants caused two actions to be commenced in the District Court for Custer County, Territory of Montana, one against Young and the other against Young and Winchester, the first to recover $683.71, (the balance claimed to be due them from Young on his original indebtedness to them,) and the second to recover $931.44, as the balance due them from Young and Winchester for merchandise sold and delivered by the defendants between the date of the assignment and the commencement of those actions; that they caused attachments to be issued in such actions against the property of Young, and of

Young and Winchester, respectively, under which, by the direction of the defendants herein, the stock of merchandise, in the possession of Winchester as aforesaid, was seized and taken possession of by the officer serving the attachments; that said property was of the value of $6000; that afterwards, January 15, 1884, Winchester, as such assignee, sold and conveyed to the plaintiffs herein the property so attached, which writing was duly recorded on the day of its date; and that the plaintiffs by such sale and conveyance became the owners of said property.

The complaint further alleged that the plaintiffs purchased the property for the sole purpose of preserving it from sacrifice by sale under the attachments, and that it might be applied to the purposes and objects of the trust, and for the benefit, share and share alike, of all the creditors of Young and of Winchester, as assignee; that the officer having the attachments refused, upon the demand of the plaintiffs, and under the order of the defendants, to deliver the attached property to them; that a like demand was made upon the defendants, but they refused to surrender it, and have wrongfully converted all of it to their own use and benefit, to the damage of plaintiffs in the sum of $6000; and that the total value of the merchandise sold by the defendants to Winchester, as assignee, was $2675, on which he had paid $1743.36.

The prayer of the plaintiff is for a judgment for $6000, the value of the property, with interest, and $1500 damages.

The answer alleges that while the defendants supposed from the representations made to them by Young and Winchester that an assignment had been made by Young to Winchester, in good faith, for the benefit of their creditors without preference, and while they had sold goods to Winchester in the belief that he ordered and procured them merely to facilitate his disposal of the goods acquired by him under the alleged assignment, they, subsequently, ascertained that no valid assignment had been made; that the goods, so pretended to be assigned, remained in the actual possession of Young, and never were delivered to Winchester; that the alleged assignment was a mere device to hinder Young's creditors from collecting their

debts by legal process; and that the whole arrangement was a trick, upon the part of Young, to continue in the control of the goods, through Winchester, who was only his clerk, and to so manage his business that he could pay out of the proceeds of the trust property and out of the new goods procured by him in the name of Winchester such creditors as he chose to pay, and to delay and defraud others, including the defendants.

The answer avers that the alleged deed of assignment was fraudulent and void under the statutes of the Territory of Montana, in force in 1883, when the deed was made. Those statutes provided: "§ 165. All deeds of gift, all conveyances and transfers or assignments, verbal or written, of goods, chattels or things in action, made in trust for the use of the person making the same, shall be void as against the creditors, existing or subsequent, of such person." "§ 169. Every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by the immediate delivery, and be followed by an actual and continued change of possession of the things sold and assigned, shall be conclusive evidence of fraud as against the creditors of the vendor or the person making such assignment or subsequent purchasers in good faith. § 170. The term creditors, as used in the last section, shall be construed to include all persons who shall be creditors of the vendor or assignor at any time while such goods and chattels shall remain in his possession or under his control." "§ 172. Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands or in goods in action, or of the rents or profits thereof, made with intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, and any bond or other evidences of debt given, suits commenced, decrees or judgment suffered, with the like intent as against the person hindered, delayed or defrauded, shall be void." Laws of Montana, 1879, pp. 436–7. [These provisions are printed in the Compiled Laws of Montana, ed. 1887, on pages 652 and 653, as sections 222, 226, 227 and 229 of the Fifth Division.]

The answer averred that under these circumstances and in conformity with these statutory provisions, the above actions were brought in Montana by the present defendants. In those actions Young and Winchester appeared and such proceedings were had therein that judgment was rendered against Young in the action against him for $1024.93 and against Winchester in the other action for $1995.35. The attached property was sold under executions on those judgments for $676.90, which is alleged to have been its full value.

There was a verdict in the present action in favor of the plaintiffs. The case has been twice before the Supreme Court of Minnesota, first upon appeal from the order overruling a demurrer to the complaint, *Noyes* v. *Beaupré*, 32 Minnesota, 496, where the complaint was adjudged to be sufficient in law, and then upon appeal from the final judgment, *Noyes* v. *Beaupré*, 36 Minnesota, 49.

*Mr. I. V. D. Heard* for plaintiffs in error, submitted on his brief.

*Mr. C. K. Davis* for defendants in error.

Mr. Justice Harlan delivered the opinion of the court.

The contention of the plaintiffs in error is, that by the statutes of the Territory of Montana, above quoted, the alleged assignment by Young to Winchester was conclusively fraudulent as to them, for the want of the immediate delivery, followed by an actual and continued change of possession, of the goods assigned; that their right to so treat the assignment, although such right was specially set up and claimed, was denied; and that, consequently, they were denied a right arising under an authority exercised under the United States. Whether the state court so interpreted the Territorial statute as to deny such right to the plaintiffs in error, we need not inquire, for it proceeded, in part, upon another and distinct ground, not involving any federal question, and sufficient, in itself, to maintain the judgment, without reference to that question. That ground is, that there was evidence tending to

show that the defendants acquiesced in and assented to all that was done, and waived any irregularity in the mode in which the assignee conducted the business; and that the question whether the defendants so acquiesced and assented with knowledge of all the facts and thereby waived their right to treat the assignment as fraudulent, was properly submitted to the jury. The state court evidently intended to hold that, even if the assignment was originally fraudulent, as against the creditors, by reason of Young remaining in the store as clerk for Winchester, and assisting the latter in carrying on the business, it was competent for the plaintiffs in error to waive the fraud and treat the assignment as valid for all the purposes specified in it. That view does not involve a federal question. Whether sound or not, we do not inquire. It is broad enough, in itself, to support the final judgment, without reference to the federal question, and for that reason the judgment must be

*Affirmed.*

BEAUPRÉ *v.* NOYES. Error to the Supreme Court of the State of Minnesota. No. 159 argued and submitted with No. 160, January 23, 1891. MR. JUSTICE HARLAN delivered the opinion of the court. This case is the same case, in respect to the issues and facts as the above case. It is a writ of error to review the judgment of the Supreme Court of the State affirming the order of the court of original jurisdiction refusing a new trial in the above action. This writ was sued out upon the theory that the denial of a new trial might be regarded as a final judgment of the state court within the meaning of the act of Congress. But, clearly, this court has no jurisdiction to review such an order. The writ of error in case 159 must, therefore, be

*Dismissed.*

Mr. *I. V. D. Heard* for plaintiffs in error.

Mr. *C. K. Davis* for defendants in error.