SOUTHERN PACIFIC COMPANY *v.* SCHUYLER.

ERROR TO THE SUPREME COURT OF THE STATE OF UTAH.

No. 143. Argued January 23, 1913.—Decided February 24, 1913.

Whether the anti-pass provision of the Hepburn Act prohibits a carrier from giving free interstate transportation to employés of the Railway Mail Service when not on duty but traveling for their own benefit, is a Federal question.

One holding a government commission that entitles him to free interstate railway transportation while on duty and who while not on duty enters a train, relying on such commission and with the consent of the officials in charge of the train, and remains thereon with their consent, is not a trespasser even if in so doing he violates the anti-pass provision of the Hepburn law.

Whether the relation of carrier and passenger arises in the case of one traveling gratuitously in violation of the anti-pass provision of the Hepburn Act, in the absence of any Federal statute regulating the matter, is a question not of Federal, but of state, law.

Where the decision of the state court adverse to plaintiff in error proceeds upon two independent grounds, one of which does not involve a Federal question and is sufficient to support it, the writ of error will be dismissed or the judgment affirmed according to circumstances.

On writ of error to a state court, while this court does not ordinarily review findings of fact, if a Federal right has been denied as the result of a finding of fact which is without support in the evidence,

this court may examine the evidence to the extent necessary to give plaintiff in error the benefit of the Federal right asserted.

In this case the finding of the state court that a railway mail clerk while traveling on his own business was a gratuitous passenger was well founded on the evidence.

There is no presumption that a railway company gives free interstate transportation, and that is a fact that must be established by evidence.

The anti-pass provision of the Hepburn Act does not make an outlaw of one traveling interstate on a pass and so deprive him of the benefit of the local law that makes the carrier responsible for exercising due care.

Penalties are not to be enlarged by construction; and so *held* that one violating the Hepburn Act by accepting gratuitous passage is not deprived of protection due to other passengers under the local law as well as subject to the penalty specified in the act.

In Utah the rights of safe carriage on a common carrier are not derived from the contract of carriage but are based on the law of the State requiring the carrier to use due care for the safety of passengers.

37 Utah, 581, affirmed.

THE facts, which involve the liability of an interstate railway carrier for personal injuries sustained through its negligence by a railway mail service clerk traveling without payment of fare, and the construction of the anti-pass provisions of the Hepburn Act, are stated in the opinion.

*Mr. Maxwell Evarts*, with whom *Mr. P. L. Williams* and *Mr. E. M. Bagley* were on the brief, for plaintiff in error:

Railway mail service employés are prohibited by the anti-pass clause of the Interstate Commerce Act from using their official commissions to obtain free interstate rides when off duty or when not in the discharge of their public duties. *L. & N. R. Co.* v. *Mottley*, 219 U. S. 467. Interstate Commerce Law, § 1, par. 4, 34 Stat., p. 584.

The Interstate Commerce Commission has ruled that employés in the mail service are not entitled to free transportation when not on duty. Sen. Doc. No. 226, p. 26,

1st sess., 60th Cong.   Congress has impliedly sanctioned
this interpretation of the act.   See 35 Stat. 60; *United
States* v. *Wells-Fargo Express Co.*, 161 Fed. Rep. 607; 36
Stat. 546; *N. H. R. R.* v. *Int. Com. Comm.*, 200 U. S. 361,
401; *United States* v. *Hermanos*, 209 U. S. 337.

It was the purpose of the Anti-Pass Act that all cit-
izens should under the same circumstance be treated
alike.   *C. I. & L. R. Ry. Co.* v. *United States*, 219 U. S.
486; *N. H. R. R.* v. *Int. Com. Comm.*, 200 U. S. 361, 392.
To have granted Schuyler, or for him to have used, free
interstate transportation would constitute just such
discrimination as the statute was designed to abolish.

Schuyler's commission was in fact really nothing more
than the certificate or credentials issued by the Govern-
ment certifying to his appointment and authority.   See
*Ill. Cent. Ry. Co.* v. *Dunnigan*, 95 Mississippi, 749, to
effect that railroads are not compelled to grant free trans-
portation to any of the excepted classes named in the act.
Even if it had previously been accepted or regarded as
entitling the holder to free rides when off duty, the com-
mission became null and void for that purpose when the
Hepburn Act went into effect, at least so far as free
interstate traveling when off duty was concerned.   *Little
Rock Ry. Co.* v. *Dowell*, 142 S. W. Rep. 165; *L. & N. R.
Co.* v. *Mottley*, 219 U. S. 467.

It was beyond the power of the state court to read into
the Hepburn Act an exception in favor of "gratuitous"
passengers, thereby evading the effect of the law and
attempting to enlarge the class to whom Congress had
limited the right of free interstate transportation.   *Am.
Exp. Co.* v. *United States*, 212 U. S. 522.

The Hepburn Act is the paramount and sole existing
law on the subject of free interstate transportation,
whether it is called gratuitous or free.   *Armour Packing
Co.* v. *United States*, 209 U. S. 56, 82; *Fulgham* v. *Midland
Valley R. Co.*, 167 Fed. Rep. 660, 662; *E. P. & N. E. Ry.*

*Co.* v. *Gutierrez*, 215 U. S. 87; *Cound* v. *A., T. & S. F. Ry. Co.*, 173 Fed. Rep. 527, 531; *United States* v. *Colorado & N. W. R. Co.*, 157 Fed. Rep. 321, 330.

There is no presumption that the railroad company violated the statute and granted Schuyler a free interstate ride; and there is no evidence in the record to support any such conclusion. *Creswill* v. *Knights of Pythias*, 225 U. S. 246, 261; *United States* v. *Williams*, 159 Fed. Rep. 310; *Union Pacific Railway Co.* v. *Nichols*, 8 Kansas, 505.

Schuyler induced his carriage on this interstate trip by fraud and misrepresentation. He was an unauthorized intruder on the train, engaged in the commission of a misdemeanor as defined in the Hepburn Act, and had no rights enforceable at law. *Fitzmaurice* v. *N. Y., N. H. & H. R. Co.*, 192 Massachusetts, 159.

One traveling on a free pass or a mileage ticket which had been issued to another by name and not transferable is barred by his fraudulent conduct from recovering for a personal injury, unless it was due to negligence so gross as to show a willful injury. *Tol., Wab. & West. Ry. Co.* v. *Beggs*, 85 Illinois, 80; *Way* v. *C., R. I. & P. R. Co.*, 64 Iowa, 48; *Condran* v. *Chi., Mil. & St. P. Ry. Co.*, 67 Fed. Rep. 522; *Tol., Wab. & West. R. Co.* v. *Brooks*, 81 Illinois, 245; *C., B. & Q. Ry. Co.* v. *Mehlsack*, 131 Illinois, 61; *Godfrey* v. *Ohio & Miss. Ry.*, 116 Indiana, 30; *McVeety* v. *St. P. & Minn. Ry.*, 45 Minnesota, 268; *McNeill* v. *Durham & Charlotte R. R.*, 31 Am. & Eng. Railroad Cas. (N. S.) 285; *Railroad Co.* v. *Michie*, 83 Illinois, 431; *Robertson* v. *Railway Co.*, 22 Barb. 91; *Prince* v. *Railroad Co.*, 64 Texas, 146; *Railway Co.* v. *Campbell*, 76 Texas, 175; *Way* v. *Railway Co.*, 74 Iowa, 463.

To the same effect see: *Harmon* v. *Jensen*, 176 Fed. Rep. 519; *Sessions* v. *So. Pac. Co.*, 159 California, 599; *Norfolk &c. Ry.* v. *Bondurant*, 107 Virginia, 515; *Duncan* v. *Maine Cent. R. Co.*, 113 Fed. Rep. 508; *Brown* v. *M., K.*

& *T. Ry. Co.*, 64 Missouri, 536; *Moore* v. *Ohio River R. R. Co.*, 41 W. Va. 160.

Good faith on Schuyler's part does not affect this case. *Clement* v. *Dwight*, 121 N. Y. Supp. 788, 791; *Rudy* v. *Railway Company*, 8 Utah, 165.

Schuyler's right was in no way affected by any belief he may have entertained as to his right to ride on his ticket. *Crosby* v. *Buchanan*, 23 Wall. 420, 458; *Gardner* v. *N. H. & N. Co.*, 51 Connecticut, 143.

Inasmuch as Schuyler was denied by the Federal statute the right to a free ride on an interstate trip—of which law and denial he is presumed to have had knowledge—the conductor could not by mere acquiescence confer such a right on him. *Clark* v. *C. & N. W. R. Co.*, 165 Fed. Rep. 408; *Purple* v. *U. P. R. Co.*, 114 Fed. Rep. 123; *Condran* v. *Ry. Co.*, 67 Fed. Rep. 522; *Grahn* v. *International &c. R. Co.*, 100 Texas, 27; *McVeety* v. *St. Paul &c. R. Co.*, 45 Minnesota, 268.

Schuyler was not an accepted gratuitous passenger. No contract to permit him to ride free was ever made between him and the carrier. *Ewell* v. *Daggs*, 108 U. S. 143; *Holman* v. *Johnson*, Cowp. 341; *Bank of United States* v. *Owens*, 2 Pet. 527; *Pullman's Car Co.* v. *Transp. Co.*, 171 U. S. 138, 151; *Duncan* v. *Maine Cent. R. Co.*, 113 Fed. Rep. 508.

The verdict of the jury and the judgment of the state Supreme Court are not supported by evidence and are contrary to law. *Carter* v. *Texas*, 177 U. S. 442; *Waterbury* v. *R. R. Co.*, 17 Fed. Rep. 671.

*Mr. Edward M. Cleary*, *Mr. Bert Schlesinger*, *Mr. Alfred W. Agee* and *Mr. James B. McCracken*, for defendants in error, submitted.

MR. JUSTICE PITNEY delivered the opinion of the court.

This is a review, under Rev. Stat., § 709, of a judgment

recovered against the plaintiff in error for damages on account of the death of one Charles Albert Schuyler, occasioned by the derailment of a mail train at Gertney, Utah, January 14, 1907, while the deceased was riding thereon. It appears that he was an assistant chief clerk in the United States Railway Mail Service, and held a commission or certificate signed by the Postmaster General in the following form:

"POSTOFFICE DEPARTMENT, Washington, D. C. "To Whom Concerned:

"The bearer hereof, Charles Albert Schuyler, has been appointed an assistant chief clerk railway mail service with headquarters Ogden, Utah, and will be obeyed and respected accordingly. Railroad companies are requested to extend to the holder of this commission the facilities of free transportation on the lines named on opposite page. If fare is charged receipt should be given. Valid only when issued through the office of the second assistant postmaster general and countersigned by James E. White.

'G. B. CORTELYOU.

"Countersigned:
"JAMES E. WHITE,
"General Superintendent."

On opposite page:

"Good between all stations Utah, Idaho, Nevada, California, Montana, and Colorado."

The deceased had been called to go from Ogden, Utah, to Oakland, California, on account of the illness of his child. The child having died, he set out to return from Oakland to Ogden, and took the mail train in question with the knowledge of the train agent and conductor in charge, using as evidence of his right to transportation the com-

mission above quoted.  It was on this interstate journey that the train was derailed and the deceased came to his death as already mentioned.

The defense (so far as here pertinent) was that the deceased was not traveling upon any official business that entitled him to free transportation under his commission, and that in riding free he was violating the act of Congress of June 29, 1906, commonly called the Hepburn Act (34 Stat. 584, 585, c. 3591, § 1), which forbids common carriers subject to the provisions of the act, after January 1, 1907, to "directly or indirectly issue or give any interstate free ticket, free pass, or free transportation for passengers, except  .  .  .  to Railway Mail Service employés, post-office inspectors, customs inspectors and immigration inspectors;  .  .  .  and any person, other than the persons excepted in this provision, who uses any such interstate free ticket, free pass, or free transportation, shall be subject to a like penalty." It was therefore contended that the deceased was a trespasser, and that the defendant was under no legal duty to care for his safety.

In the trial court there was a verdict for the plaintiffs, and from the judgment thereon the present plaintiff in error appealed to the Utah Supreme Court, which at first reversed, and afterwards, on a rehearing set aside the reversal and affirmed the judgment below; subsequently denying the company's application for a new trial.  37 Utah, 581, 595, 612.

The court held that there was no evidence to support a finding that the deceased was traveling on appellant's train in the discharge, or in pursuance, of duties pertaining to the Railway Mail Service; and that upon the evidence adduced the only permissible inference was that he left Ogden and went to Oakland solely on account of the death of his child, and that he was on the return journey of that mission when the train was derailed.

But the court also found that the existence of the rela-

tion of carrier and ·passenger .between .the deceased and
the railroad company, and a breach of the duty of care
for the passenger's safety, resulting in his death, were so
conclusively made to appear as to entitle respondents to a
directed verdict on those issues, so that certain errors
committed by the trial court in the instructions to the
jury became of no consequence. The court said: "That
the car was derailed through the negligence of appellant
as alleged in the complaint, and that the deceased was
killed by reason of such derailment is, upon the record,
not open to controversy. No substantial conflict is pre-
sented by the evidence on that subject."

Upon the question of the relation of. carrier and pas-
senger the court reasoned as follows: "When he left Ogden
he entered a mail car in appellant's train. The evidence
of his right to enter the mail car and be carried by appel-
lant was the commission issued to him, which, on its face,
entitled him to transportation between all stations in
Utah, Nevada, and California. The commission, on its
face, granted 'the facilities of free transportation on the·
lines named,' regardless of the question whether he was
or was not in the discharge of public duties. It was issued
to him before the Hepburn Act took effect. The derail-
ment and the deceased's death occurred 14 days after the
act took effect. It was admitted by the parties on the
trial that the deceased used the commission on the trip
as 'the evidence of his right to ride—the evidence of his
right of transportation,'—and that no question would be
raised with respect to the exhibition of the commission
to the conductor in charge of the train. The deceased, at
Oakland, in the presence of the conductor and train agent,
and with their knowledge, entered a mail car in a train ·
about to leave for Ogden, and impliedly with their con-
sent, at least without their objection. In view of the
stipulation, and upon the whole record, we think the only
permissible inferences are, that the deceased, both in going

to and in returning from Oakland, rode in the mail car with the knowledge and consent of appellant's conductors in charge of the train; that the appellant, its conductors and agents in charge of the train, and the deceased, in good faith, assumed and believed that the commission entitled him to so ride and to be transported in the mail car, regardless of the fact whether he was or was not on duty, and that the commission was so treated and so recognized by them, and as 'the evidence of his right of transportation.' There is nothing in the record to support the allegations in the answer that the deceased entered the mail car without appellant's knowledge or consent, or against its will, or with the intent, or for the purpose, of deceiving or defrauding the appellant or the Government, or that he otherwise entered the car clandestinely or fraudulently, or in bad faith, or with any wrongful design or purpose. The evidence, quite conclusively, shows the contrary. The deceased was, therefore, not a trespasser."

In dealing with the questions of law arising from this state of facts, the court held, first, that the Hepburn Act does not forbid a carrier from giving free interstate transportation to Railway Mail Service employés when not on duty and when traveling for their own benefit or pleasure, and, secondly, "Though the construction which we have given the Hepburn Act should not be correct, and though it was unlawful for the appellant to give, and the deceased to receive, free transportation on his commission, when he was not on duty, yet we are also of the opinion that, under all the circumstances of the case, the appellant, having undertaken and assumed to carry and transport the deceased as a passenger by reason of the commission, cannot escape liability for the consequences of its negligence on that ground." And again: "We are of the opinion that when a common carrier accepts a person as a passenger, he is not permitted to deny that he

owes to him the duty of diligence, prudence, and skill, which, as carrying on a public employment, he owes to all his passengers; and that he cannot escape liability for a negligent performance of that duty resulting in injury by urging that the pass or commission was issued, or the gratuitous passage permitted, by him, in violation of law." As authority for this proposition the court cited *Carroll v. Staten Island R. R. Co.*, 58 N. Y. 126; *Del., Lack: & Western R. R. Co. v. Trautwein*, 52 N. J. Law, 169; 7 L. R. A. 435; 5 Am. & Eng. Encyc. Law (2d ed.), 508, and other authorities.

It is plain that the decision adverse to the plaintiff in error was upon two independent grounds, the second ground being avowedly based upon the hypothesis that the court might be wrong in its decision upon the first.

Whether the Hepburn Act prohibits a carrier from giving free interstate transportation to the employés of the Railway Mail Service when they are not on duty but are traveling for their own benefit or pleasure, is of course a Federal question.

But whether—assuming that question to be answered in the affirmative—the relation of carrier and passenger arises in the case of gratuitous passage under circumstances such as are presented in this case, is (in the absence of an act of Congress regulating the matter) a question not of Federal but of state law.

It is settled by numerous decisions of this court that where the decision in the state court adverse to the plaintiff in error proceeds upon two independent grounds, one of which, not involving a Federal question, is sufficient to sustain the judgment, the writ of error will be dismissed or the judgment affirmed, according to circumstances. *Murdock* v. *City of Memphis*, 20 Wall. 590, 635, 636; *De Saussure* v. *Gaillard*, 127 U. S. 216, 234; *Hale* v. *Akers*, 132 U. S. 554, 565; *Hopkins* v. *McLure*, 133 U. S. 380; *Johnson* v. *Risk*, 137 U. S. 300; *Beaupre* v. *Noyes*,

138 U. S. 397; *Hammond* v. *Johnston,* 142 U. S. 73, 78; *Giles* v. *Teasley,* 193 U. S. 146, 160; *Allen* v. *Arguimbau,* 198 U. S. 149, 154; *Leathe* v. *Thomas,* 207 U. S. 93, 98. In *Murdock* v. *City of Memphis* and *Beaupre* v. *Noyes* this court affirmed the judgments of the state court. In the other cases cited the writs of error were dismissed without considering the Federal questions.

Except for two contentions of the plaintiff in error now to be mentioned, a dismissal of the writ of error would necessarily follow in the present case, since the second ground of decision adopted in the state court is manifestly independent of the first and is fully sufficient, to support the judgment; and except for what follows it involves no question of Federal right.

It is insisted (*a*) that there is no presumption that the railroad company violated the prohibition of the Hepburn Act by granting to Schuyler a free interstate ride, and that there is no evidence in the record to support such conclusion; and while it is conceded that ordinarily, upon writ of error to a state court, this court does not review the findings of fact, yet it is insisted that in this case a Federal right has been denied as the result of a finding of fact which is without support in the evidence; that the evidence is before us in the record by which that insistence may be tested; and that the status of Schuyler as an interstate passenger is a mixed question of law and fact so that it is incumbent upon us to analyze the evidence to the extent necessary to give to plaintiff in error the benefit of its asserted Federal right. The insistence as to the power and duty of this court in such a case is well founded. *Kansas City Southern Ry. Co.* v. *Albers Commission Co.,* 223 U. S. 573, 591; *Cedar Rapids Gas Co.* v. *Cedar Rapids,* 223 U. S. 655, 668; *Creswill* v. *Knights of Pythias,* 225 U. S. 246, 261. We also agree there is no presumption that the railroad company gave free transportation, and that this was a fact to be established by evidence. Ac-

cepting the duty to review this question of fact, we have examined the evidence in the record and find that it fairly supports the conclusion of the state court that the deceased was accepted by plaintiff in error as a gratuitous passenger.

But, finally, it is argued (b) that it was beyond the power of the state court to "read into the Hepburn Act an exception in favor of gratuitous passengers"; thereby (as is said) enlarging the class to whom Congress limited the right of free interstate transportation. This is ingenious, but, as we think, unsound. As applied to the concrete case, it is equivalent to saying that the operation of the Hepburn Act is such as to deprive one who, in good faith and without fraud, and with the consent of the carrier, but in actual though unintentional violation of the prohibition of the act, accepts a free passage in interstate transportation, of the benefit of a rule of local law that renders the carrier in such circumstances responsible for exercising care for the passenger's safety because the carrier has voluntarily undertaken the burden of such care. But the act itself declares what penalty shall be imposed for a violation of its prohibition: "Any common carrier violating this provision shall be deemed guilty of a misdemeanor and for each offense, on conviction, shall pay to the United States a penalty of not less than one hundred dollars nor more than two thousand dollars, and any person, other than the persons excepted in this provision, who uses any such interstate free ticket, free pass or free transportation, shall be subject to a like penalty." This penalty is not to be enlarged by construction. Neither the letter nor the spirit of the act makes an outlaw of him who violates its prohibition by either giving or accepting gratuitous interstate carriage. The deceased no more forfeited his life, limb or safety, and no more forfeited his right to the protection accorded by the local law to a passenger in his situation, than the carrier

forfeited its right of property in the mail car upon which the deceased rode. His right to safe carriage was not derived, according to the law of Utah, from the contract made between him and the carrier, and therefore was not deduced from the supposed violation of the Hepburn Act. It arose from the fact that he was a human being, of whose safety the plaintiff in error had undertaken the charge. With its consent he had placed his life in its keeping, and the local law thereupon imposed a duty upon the carrier, irrespective of the contract of carriage. The Hepburn Act does not deprive one who accepts gratuitous carriage, under such circumstances, of the benefit and protection of the law of the State in this regard.

It results that the judgment under review must be affirmed, irrespective of the question whether the Hepburn Act forbids the giving of free interstate transportation to the employés of the Railway Mail Service when not on duty.

*Judgment affirmed.*