HOUSTON & T. C. R. CO. et al. v. COMMONS et al.

(Court of Civil Appeals of Texas. Dallas. Nov. 15, 1913. Rehearing Denied Dec. 6, 1913.)

1. CARRIERS (§ 132*)—INJURIES TO GOODS—ACTION—EVIDENCE.

In an action for damages to eggs shipped in the same car with live poultry, in which the carriers contended that the shipment was illegal because its tariff sheets as filed with the Interstate Commerce Commission did not authorize the mixing of eggs and live poultry to obtain the car load freight rate, but it appeared that the eggs were not so shipped secretly to fraudulently obtain the lower rate but with the knowledge of the carriers' agent at the point of shipment, and that the freight charges were to be collected at destination, and it did not appear that the agent at the point of destination did not know that the eggs were included in the shipment and did not collect

the scheduled rate, it would be presumed that he collected such rate as it was his duty to do.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 578–582, 605; Dec. Dig. § 132.*]

2. CARRIERS (§ 112*)—INJURIES TO GOODS—LIABILITY—LEGALITY OF SHIPMENT.

Where, though a shipper of eggs included them with live poultry to make a car load, thus obtaining a lower freight rate than he was entitled to, he did so in good faith, with the knowledge of the carriers' agent, the illegality of the shipment did not absolve the carriers of liability for damages to the eggs through their negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 480, 484, 485; Dec. Dig. § 112.*]

Appeal from Collin County Court; H. L. Davis, Judge.

Action by A. J. Commons and others against the Houston & Texas Central Railroad Company and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and G. R. Smith, of McKinney, for appellants. J. R. Gough, of McKinney, for appellees.

TALBOT, J. This suit was originally brought in the justice court of Collin county, Tex., by the appellees against the appellants for damages to certain eggs and chops shipped with a car load of live poultry from McKinney, Tex., to Los Angeles, Cal. Appellees recovered judgment in the justice court. Notice of appeal was given by appellants and appeal perfected by filing the appeal bond to the county court of Collin county, Tex., where the case was again tried before the court and a judgment again rendered in favor of appellees against both appellants for the sum of $137.67. Appellants' motion for a new trial being overruled, they appealed.

Prior to the date of this shipment, the defendants had prepared rate sheets and schedules fixing the joint and through freight rates and charges for the different classes of freight from points in Texas, including the city of McKinney, to points in California, including the city of Los Angeles, and these tariff sheets had been filed with the Interstate Commerce Commission and posted and published as required by what is known as the Interstate Commerce Act, then in force. There was no provision in the tariff sheets expressly authorizing the mixing of a car load shipment of live poultry of the minimum weight of 20,000 pounds transported from McKinney, Tex., to Los Angeles, Cal.; the freight charges would be $2 per hundredweight, while the freight rate for eggs less than car load lots from and to the same points was $2.60 per hundred pounds. There were no freight charges billed against the eggs as such in the shipment in question, and it does not appear that there was any freight paid for the shipment of eggs as eggs. The poultry did not weigh 20,000 pounds and the eggs, with the knowledge and consent of appellants' agent at McKinney, were placed in

the car to make up the minimum weight of 20,000 pounds for a car load of live poultry. The appellees recovered $72 for the damage to the eggs.

[1] Appellants contend in effect that the shipment in question being an interstate one, and the right or privilege to ship the eggs in the same car with the live poultry to make up the minimum car load weight of 20,000 pounds not having been incorporated in the tariff sheets of the appellants and published in accordance with the requirements of the Interstate Commerce Act of February 4, 1887 (24 Stat. 379, c. 104 [U. S. Comp. St. 1901, p. 3154]), as amended in June, 1906 (34 Stat. 586, c. 3591 [U. S. Comp. St. Supp. 1911, p. 1284]), the contract or agreement between the appellees and the agent of appellants at McKinney, Tex., to so ship the property, if there was such a contract, was illegal, and no recovery can be had for any damage to the eggs while in transportation. We are of opinion this contention should not prevail. There was testimony introduced to the effect that there was no provision in the rate sheets and schedules filed with the Interstate Commerce Commission authorizing the mixing of car load shipments of live poultry and eggs, but, if there was any express prohibition of such shipments, it does not appear. The testimony is ample to support the finding that the eggs in question were shipped in the car with the poultry with the knowledge and consent of the appellants' agent at McKinney, and that the duty of collecting the fixed freight rate for the transportation of the eggs devolved upon the railway company's agents. "The shipment was billed collect," and the freight in such a case is paid at destination. It was the duty of appellants' agent at Los Angeles, Cal., to collect for the shipment of eggs the rate prescribed in the tariff sheets filed with the Interstate Commerce Commission. The company's agent, W. E. Briggs, testified, among other things: "If the agent at destination had discovered the fact that eggs were loaded in the car, it would have been his duty under the regulation of the tariff to have assessed the less than car load rate on the actual weight of the shipment." There is nothing in the testimony that would justify the conclusion that the eggs were secretly shipped in the car with the poultry to fraudulently secure a less freight rate than that named in the rate sheets and schedules filed with the Interstate Commerce Commission. The testimony of at least two witnesses offered by the appellees is positive that appellants' agent at McKinney was informed and actually knew that the eggs were being or had been placed in the car with the poultry for shipment, while the testimony of this agent is to the effect he does not remember that he gave permission for the eggs to be loaded in the car with the poultry; that he has no recollection of any eggs being loaded in the car with the poultry. The eggs, together with the poultry, were delivered at point of destination, and it does not appear that the railway company's agent there did not know the eggs had been shipped with the poultry. The fair, if not the conclusive, presumption is that he did know of such shipment. The bill of lading, which was in the hands of appellants' agent, was not introduced in evidence; and, while the waybill delivered to appellees shows that the weight of the shipment was 20,000 pounds and that the freight charges were $400, yet the amount of freight actually paid is nowhere disclosed by the evidence. It occurs to us that in the state of the evidence the presumption should be indulged that the shippers paid at destination, to secure the delivery of the poultry and eggs, the freight charges fixed by the tariff sheets. It was the duty of appellants' agents at such point to collect such charges, and, if they did not do so, we do not think appellants should be heard to complain and urge in defense of appellees' cause of action that the contract for the shipment of eggs was illegal, and no recovery for the damage done the eggs as a result of their negligence can be had.

[2] But, however this may be, we are unwilling to hold that appellants are absolved from all liability for the damage done appellees' eggs by the negligence of appellants' servants while being transported, upon the theory that the eggs were accepted for shipment, with the poultry, at a less freight rate than that prescribed in the tariff sheets filed with the Interstate Commerce Commission. To so hold would be in effect to say that because of such acceptance the railway company was authorized to confiscate or convert to its own use the eggs shipped. If the company, because of such fact, can escape liability for the damages sustained by appellees as a result of their negligence in handling the eggs while in transportation, then why could it not have refused to deliver them at all at destination and have appropriated them to its own use, without incurring any liability for such disposition of the property? No good reason, we apprehend, can be given why it may not have pursued that course. The evidence does not sustain the view that the eggs were placed in the car with the poultry without the knowledge of appellant, or against its will, or with the intent of defrauding the appellant. On the contrary, it is a fair inference that appellants' agent at McKinney and the appellees, or at least the appellees, in good faith assumed and believed that in shipping the eggs in the car with the poultry they were doing no wrong; and though the schedules and tariff sheets filed by the appellants with the Interstate Commerce Commission may not have permitted the shipment of eggs with a car load of live poultry in order to make up the minimum car load weight of 20,000 pounds, at the freight rate of $2 per hundredweight, and that such shipment in this instance was in

that sense an illegal act, yet we are of the opinion that under the circumstances of the case the appellants, having undertaken and assumed to transport the eggs in the car with the poultry, cannot escape liability for the consequences of their negligence which resulted in damage to the eggs on that ground. The infliction of no such penalty for such an act was contemplated, we think, by the Interstate Commerce Act. Southern Pacific Co. v. Schuyler, 227 U. S. 601, 33 Sup. Ct. 277, 43 L. R. A. (N. S.) 901. We regard the facts here as being dissimilar to those in the case of Bergin v. Railway Company, 150 S. W. 1184, and not ruled by the decision in that case. This disposes of the only question raised on the appeal that need be discussed.

It is quite sufficient to say that the other assignments of error have been examined with the conclusion reached that none of them point out reversible error.

The judgment is affirmed.