CHICAGO, R. I. & G. RY. CO. v. MANBY.
(No. 1431.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 4, 1918.)

1. CARRIERS ☞227(1)—LIVE STOCK—ACTION —PLEADING DAMAGES.

In action for delay in shipment of live stock, an allegation that the market had declined below that at time cattle should have arrived, and that cattle had lost in weight and marketable appearance, was sufficiently specific allegation of damage sustained.

2. EVIDENCE ☞323(4) — HEARSAY — MARKET PRICE.

In action for delayed delivery of live stock, witnesses who accompanied shipment could, over objection that their knowledge was based on hearsay, testify that the market was lower on the afternoon of day on which destination was reached than during morning of same day prior to their arrival, where they were experienced cattlemen, had shipped a great many cattle, and had received market reports regularly.

3. CARRIERS ☞215(1)—LIVE STOCK—LIABILITY FOR LOSS—INVALID CONTRACT.

Invalidity of shipping contract under Interstate Commerce Act (U. S. Comp. St. 1916, § 8563 et seq.) does not preclude shipper from recovering for loss or injury to goods by reason of carrier's negligence, or from injury due to delay in transportation, or for damages caused by carrier willfully misrouting goods, compelling shipper to pay higher rate of freight.

Appeal from Wheeler County Court; L. D. Miller, Judge.

Action by A. Manby against the Chicago, Rock Island & Gulf Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

C. E. Gustavus, of Amarillo, and N. H. Lassiter, of Ft. Worth, for appellant.

M. Reynolds and J. B. Clark, both of Shamrock, for appellee.

HALL, J. The following statement is adopted from appellant's brief:

"This was a suit in the county court of Wheeler county by A. Manby, against the Chicago, Rock Island & Gulf Railway Company, to recover damages on account of alleged injury to a shipment of five cars of cattle from Shamrock, Tex., to Kansas City, Mo., on August 19, 1916. It was alleged that the shipment was unduly delayed en route and that the cattle were insufficiently watered at Caldwell, Kan., at which point they were unloaded for feed, water, and rest, and that the market on which they were sold had declined below what it was at the time they should have arrived, and that they lost in weight and in marketable appearance."

The defendant pleaded certain special exceptions and a denial of any negligence in handling the shipment, and specially that the shipment was made under live stock contracts and tariffs filed with the Interstate Commerce Commission, and under rules and regulations of that body, authorizing the transportation of interstate shipments of live stock in carload lots, and that under those tariffs, rules, and regulations the freight rate on carload shipments was proportionately lower than on less than carload shipments, and it was provided therein that only owners or bona fide employés of the owner would be transported with shipments as caretakers, and the number of persons that were entitled to be transported and receive free return transportation were specified; that the plaintiff's shipment of cattle consisted of five carloads, and that he tendered them to the railway company, one

car in the name of W. G. Mayfield, who was also shipping one car of his own, by which shipment he was enabled to receive transportation to Kansas City, and return, to which he was not entitled, and the plaintiff included with his shipment eleven head of cattle belonging to J. F. Washam and six head belonging to H. M. Fleming, and three head belonging to W. G. Mayfield, and procured transportation for said cattle at a rate lower than the rate for the said cattle under the less than carload rates, and that he caused two of his cars to be shipped in the name of Manby and Fleming, so as to permit H. M. Fleming to accompany the shipment and receive free transportation to Kansas City and return, to which he was not entitled; that by this method of procedure the plaintiff deprived the defendant of its legal and lawful freight charges and fares, and the plaintiff, and the persons named, received the benefits thereof, which were special privileges and special services not open to all shippers, and such acts, conduct, and practice were in violation of the tariff provisions, rules, and regulations governing said shipment, and amounted to an illegal discrimination in the plaintiff's favor, on account of which the plaintiff was precluded from any recovery in this suit. Appellee has not favored the court with a brief. He did not base his action upon the contract of shipment, but sought to recover upon the common-law liability of the carrier.

[1] The first assignment of error is to the action of the court in overruling the special exception of the defendant that the plaintiff's petition, in so far as it attempts to allege the damages sought, is not sufficiently specific. We think the petition is sufficient in this particular.

[2] Appellant further urges that the court erred in permitting the witness Harry Mundy to testify that the market in Kansas City was lower on the afternoon of Tuesday than it was on the morning of that day, and in permitting the plaintiff to testify to the same effect. The objection to this testimony is that their knowledge of the morning market was obtained by hearsay. Upon further examination it appears that Mundy and Manby were experienced cattlemen; had shipped a great many cattle; that they were subscribers to the Drovers' Telegram, and received other market reports regularly. We think it was sufficiently shown that they were qualified to testify upon this point.

[3] The main contention is raised under the fourth and fifth assignments, and in substance is this: Did plaintiff, by loading, with his cattle, cattle owned by several other parties into the same car, and by making the shipment in the names of various persons, deprive himself of the right to recover damages by reason of appellant's negligence? It is insisted that the acts of appellee in so loading the cattle and in falsely billing his cattle in the name of parties not owners, thus procuring round-trip transportation for caretakers not otherwise entitled thereto, in violation of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1916, § 8563 et seq.]), deprives him of the right to recover and that the courts should leave parties to such illegal contracts where they find them. This question seems to have been decided by the United States Supreme Court and by the courts of several of the states, including Texas, adversely to appellant's contention. "The fact that a contract of shipment is invalid as violating the Interstate Commerce Law, prohibiting discrimination in rates, does not operate as a bar to an action to recover for loss of or injury to the goods by negligence or for injury due to delay in transportation, or for damages caused by willfully misrouting the goods so that the shipper is compelled to pay a much higher rate of freight." 10 C. J. 513, § 831; Merchants' Cotton-Press, etc., Co. v. Insurance Co. of North America, 151 U. S. 368, 14 Sup. Ct. 367, 38 L. Ed. 195; H. & T. C. Ry. Co. v. Commons, 160 S. W. 1107. And it is specifically held that an aggregation of shipments by various owners, in order to obtain the benefit of carload rates, does not constitute discrimination nor violate the Interstate Commerce Law prohibiting the granting of preferences and special privileges. Interstate Commerce Commission v. Delaware, L. & W. Ry. Co., 220 U. S. 235, 31 Sup. Ct. 392, 55 L. Ed. 448.

The only remaining assignment is that the court erred in the charge upon the measure of damages. We think the charge as given is applicable to the facts.

Finding no reversible error, the judgment is affirmed.