368 F.2d 516
 Frances OPPENHEIM, Estelle Oppenheim, and Seymour R. Oppenheim, individually, and Seymour R. Oppenheim as Testamentary Trustee of the Isaac Solomon Testamentary Trust and the Hinda Solomon Living Trust, Appellants,
v.
Samuel H. STERLING et al., Appellees.
 No. 8814.
 United States Court of Appeals Tenth Circuit.
 November 17, 1966.
 
 1
 Seymour R. Oppenheim, pro se (Estelle Oppenheim and Frances Oppenheim, pro se, on the brief), for appellants.
 
 
 2
 Harry M. Sterling, Denver, Colo., for appellee Samuel H. Sterling (Bernard E. Engler, Denver, Colo., for appellee Benjamin C. Hilliard, Jr., and appellee Pierpont Fuller, pro se, on the brief).
 
 
 3
 John Moore, Denver, Colo. (Duke W. Dunbar, Atty. Gen. of State of Colorado, Frank E. Hickey, Deputy Atty. Gen., on the brief), for appellees David Brofman, Edward E. Pringle, Henry E. Santo, Saul Pinchick, and Robert W. Steele.
 
 
 4
 Spencer Norman Miller, Jersey City, N. J., pro se.
 
 
 5
 Before PICKETT and SETH, Circuit Judges, and CHRISTENSEN, District Judge.
 
 
 6
 CHRISTENSEN, District Judge.
 
 
 7
 Appellants Seymour R. Oppenheim, as the testamentary trustee of the Isaac Solomon Testamentary Trust and the Hinda Solomon Living Trust and as beneficiary, and his two sisters, Frances Oppenheim and Estelle Oppenheim as beneficiaries brought suit for damages and other relief in the United States District Court, claiming conspiratorial maladministration by defendants of the trusts which had been and were then being administered in courts of the State of Colorado.
 
 
 8
 Named as defendants were state trial and appellate judges,[1] former trustees of the trusts,[2] certain other beneficiaries of the trusts,[3] an attorney who represented some of the parties in the state proceedings,[4] an individual bearing the same name as plaintiff Frances Oppenheim,[5] and her attorney.[6]
 
 
 9
 The defendants Frances Oppenheim of the State of New York, Harold Bresler, Sadelle Willis, Minnie Marks and Jerome Bresler were not served with process and did not appear. Norman Miller was served in the State of New Jersey and moved to dismiss for lack of personal and subject matter jurisdiction and on the ground that the amended complaint failed to state a claim on which relief could be granted. The other served defendants moved to dismiss for lack of subject matter jurisdiction and for failure of the amended complaint to state a claim on which relief could be granted, among other grounds.
 
 
 10
 The lower court upon argument concluded[7] that the court did not have jurisdiction over the subject matter of the action and that the amended complaint as amended did not state a claim on which relief could be granted. The "motions to dismiss" were granted and the action was dismissed with prejudice. Plaintiffs as appellants here contend that diversity and federal question jurisdiction appeared from the amended complaint as amended and that claims were stated therein upon which the federal court could have granted relief.[8]
 
 
 11
 To vest a United States District Court with jurisdiction on the ground of diversity of citizenship, diversity must affirmatively appear and must be complete as between the plaintiffs on the one hand and the defendants upon the other.[9] The amended complaint as amended shows that plaintiffs individually were citizens of the State of New York and that the defendants Frances Oppenheim (either an impostor or other person of the same name as that of one of the plaintiffs) and Harold Bresler were also citizens of the State of New York.
 
 
 12
 Appellants now say that these were unnecessary parties, that they were not served and therefore that their presence should have been disregarded in ruling upon the question of jurisdiction. It may be granted that they were not indispensable parties. It appears, however, that under the theory on which plaintiffs would have the amended complaint as amended sustained, they were parties at least as proper as any others, it being asserted that all were "co-conspirators". Parties of course may be dropped in order to achieve the requisite diversity of citizenship if their presence is not essential to a just and meaningful adjudication.[10] But, in the absence of such dismissals, jurisdiction must be determined from the face of the pleading and not from returns of service of process or lack thereof. There was no motion to drop any party. Plaintiffs' motion to amend the amended complaint was limited in purpose to clearly allege the citizenship rather than the mere residence of the various parties, including that of said two defendants. The intent of the pleader to present a nondiversity case was thus confirmed. We cannot say that the trial court erred in determining that diversity jurisdiction did not exist. Cf. Knoll v. Knoll, 350 F. 2d 407 (10th Cir. 1965), supra.
 
 
 13
 Nor did federal question jurisdiction appear. The amended complaint asserted that in addition to claimed diversity jurisdiction the action was founded upon a violation of 18 U.S.C. §§ 1341, 1342, relating to mail frauds. There is no legislative history nor is there any case which has been cited to us or which we can find which supports the view that a violation of these penal statutes as such affords the court federal question jurisdiction in a civil case.[11] There are no other facts or theories presented in the amended complaint which would do so.
 
 
 14
 While, for the purpose of a motion to dismiss, facts well pleaded must be taken as true, unsupported conclusions of the pleader may be disregarded, especially when limited or negated by the substance of facts pleaded.[12]
 
 
 15
 The amended complaint consists of more than 26 pages and refers to six separate "claims". Factual allegations therein are masked or buried by subjective descriptions and are difficult to follow. Many allegations have no possible relevancy or materiality. A conclusionary plethora[13] permeates the pleading. The meaningful tissue of the amended complaint seems limited essentially to these circumstances:
 
 
 16
 Over a period of several years, and at least until one of their number became trustee, appellants have been suspicious of the motives of other beneficiaries, various disputes among them were litigated before the state courts, and plaintiffs became dissatisfied with the manner in which the state courts administered and adjudicated problems in relation to the two trusts. Apparently a development which confirmed in plaintiffs' minds their worst fears was that on or about December 26, 1962, it was discovered that a party known as "Frances Oppenheim", residing in New York City, had represented herself as or had been assumed to be plaintiff Frances Oppenheim and had received and cashed a check dated July 15, 1960, for $91.66, issued by the Hinda Solomon Living Trust, a check dated October 24, 1962, for $44.77, issued by the Living Trust, and a check dated November 1, 1962, for $81.00, issued by the Testamentary Trust. It is alleged that "The instant checks were sent with due deliberation and full intent and knowledge as to identity of addressee to the fraudulent and impostor Frances Oppenheim," but except for elsewhere concluding that this was the result of a conspiracy among all the defendants, it is not indicated who had the alleged knowledge or intent. The plaintiffs apparently reasoned that because the trustee and the courts knew that they could be reached in care of a designated attorney, sending the checks to the address of the New York party was a deliberate diversion. The defendant Miller, about the time distribution checks were being thus misdirected, wrote to the clerk of court on behalf of the New York recipient stating that his client had received notice of a hearing and asking for a copy of letters testamentary (with will annexed) and other documents. From this inquiry plaintiffs conclude that the attorney was a member of a "conspiracy" with reference to the misdirected payments and other matters. There is nothing in the amended complaint to indicate that the error was not corrected by the trustees and the court, it having been discovered by plaintiffs and reported to the court by the end of 1962. Thereafter, the principal complaint seemed to be that the court refused to permit plaintiffs to withdraw from its records those checks or to otherwise arrange for their formal re-presentment and recognition as forged endorsements by the banks, and for this purpose the plaintiffs seek, among other relief, an order in the nature of mandamus against the state judges requiring the checks to be released from the records of the court. The plaintiffs continued to be recognized as beneficiaries of the respective trusts for all the pleading shows, although there are intimations that the funds or investments have been mismanaged.[14] The plaintiffs conclude that "A conspiracy, either with the aid or knowledge and consent of the courts was developed to deliberately deprive plaintiffs of their rights and property without allowing access to due process of law."
 
 
 17
 No basis is asserted for any contention that the state courts did not, and do not now, have jurisdiction over the trusts and all problems relating thereto, except for the suggestion that in connection with the checks sent to the alleged "impostor" various notices were not received by the plaintiffs. Since the time involved was years after the state courts assumed jurisdiction, it is clear that the latter factor would not affect their continuing jurisdiction and related only to the corrective action they were authorized or required to take.
 
 
 18
 We have examined the amended complaint to determine whether, aside from plaintiffs' untenable reliance upon the mail fraud statute, there is any theory on which it could be thought to state a claim under the Constitution or laws of the United States and have concluded that there is not.[15]
 
 
 19
 This action obviously failed below by reason of lack of jurisdiction of the lower court to entertain it, despite the reference in the purported findings to the failure also to state a claim on which relief could be granted. We do not ascribe to that court's "with prejudice" order of dismissal anything beyond this.[16] So interpreting the judgment appealed from, the dismissal of the action with prejudice, that is, without granting an opportunity of further amendment, was not improper. Plaintiffs made no request for the purpose of permitting any more proper statement of a federal claim. Indeed, from the substance of the allegations relied upon, it did appear rather clear that there existed neither a diversity nor federal claim upon which relief could be granted by the trial court even though further opportunity to amend had been granted, in view of the doctrine of judicial immunity[17] and the jurisdiction which already had attached and was being exercised in the state courts,[18] and for other reasons before mentioned.
 
 
 20
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Honorable David Brofman, Judge of the Probate Court; Honorable Edward E. Pringle, former Judge of the District Court and now Justice of the Supreme Court of the State of Colorado; Honorable Henry E. Santo, Honorable Saul Pinchick and Honorable Robert W. Steele, Judges of the District Court, City and County of Denver, State of Colorado
 
 
 [2]
 Benjamin C. Hilliard, Jr., now Referee in Bankruptcy, United States District Court for the District of Colorado, and Samuel H. Sterling
 
 
 [3]
 Sadelle Willis of the State of New Jersey and Minnie Marks and Jerome Bresler of the State of California
 
 
 [4]
 Pierpont Fuller
 
 
 [5]
 Frances Oppenheim, a resident of the State of New York
 
 
 [6]
 Spencer Norman Miller, a resident of the State of New Jersey
 
 
 [7]
 "Findings of Fact" were entered; but since no evidentiary hearing was held and certain documents which have been brought before us were imported into the record after such "findings" were entered, by defendants' response in opposition to plaintiffs' motion to set them aside, we consider the purported findings simply as a memorandum of the reasoning which the trial court followed in ruling upon the motions directed to the amended complaint as amended, confining our examination of controlling facts to its allegations
 
 
 [8]
 Appellants substantially concede that the motion of the defendant Miller to dismiss on the ground that the New Jersey service did not afford the court jurisdiction over his person was meritorious. Whether the lower court intended to include this motion among the "motions" granted is not clear from the record but is not material in view of disposition of the other motions. It is apparent that the amended complaint is not based on the theory of an in rem proceeding, nor was there any order to authorize constructive service. Compare Shuford v. Anderson, 352 F.2d 755 (10th Cir. 1965)
 
 
 [9]
 Strawbridge v. Curtiss, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806); Knoll v. Knoll, 350 F.2d 407 (10th Cir. 1965)
 
 
 [10]
 Rules 19, 21, F.R.Civ.P.; Lowry v. International Brotherhood of Boilermakers, etc., 259 F.2d 568 (5th Cir. 1958); Kerr v. Compagnie De Ultramar, 250 F. 2d 860 (2d Cir. 1958); Grant County Deposit Bank v. McCampbell, 194 F.2d 469, 31 A.L.R.2d 909 (6th Cir. 1952)
 
 
 [11]
 See Anno. — Federal Questions — Laws and Treaties, 14 A.L.R.2d 992; See Schuyler v. Southern Pac. Co., 37 Utah 581, 109 Pac. 458, reh. den. 37 Utah 612, 109 Pac. 1025, affd. 227 U.S. 601, 33 S. Ct. 277, 57 L.Ed. 662; Meyer v. Kansas City Southern Ry. Co., 84 F.2d 411 (2d Cir. 1936); Jacobson v. New York N.H. and H.R. Co., 206 F.2d 153 (1st Cir. 1953); Consolidated Freightways v. United Truck Lines, 216 F.2d 543 (9th Cir. 1954). Cf. Kardon v. National Gypsum Co., 69 F.Supp. 512 (D.C.E.D.Pa.1946), and Brouk v. Managed Funds, Incorporated, 286 F.2d 901 (8th Cir. 1961)
 
 
 [12]
 Mitchell v. Parham, 357 F.2d 723 (10th Cir. 1966); Ryan v. Scoggin, 245 F.2d 54 (10th Cir. 1957); Ortega v. Ragen, 216 F.2d 561 (7th Cir. 1954); Dunn v. Gazzola, 216 F.2d 709 (1st Cir. 1954); International Harvester Company v. Kansas City, 308 F.2d 35 (10th Cir. 1962); Lewis v. Brautigam, 227 F.2d 124, 55 A. L.R.2d 505 (5th Cir. 1955); Johnson v. Stone, 268 F.2d 803 (7th Cir. 1959)
 
 
 [13]
 Such expressions as "conspiracy", "fraudulent", "in violation of constitutional rights", "deliberate use of the mails as an instrument of fraud", "the recorded attitudes of the judges clearly imply", "initially the United States mails were purposely, with full knowledge and intent, devised as a method to be used as an instrument of fraud", "the judges * * * sought and procured the assistance of the Supreme Court of the State of Colorado * * *", "assisted in the violation of federal laws in respect to the United States mails", etc
 
 
 [14]
 The prayer for relief claims huge demands apparently on the theory that there have been some types of diversions, mismanagement, or similar maladministration, but the factual basis does not definitely appear
 
 
 [15]
 Bottone v. Lindsley, 170 F.2d 705 (10th Cir. 1948), cert. den. 336 U.S. 944, 69 S.Ct. 810, 93 L.Ed. 1101; Gately v. Sutton, 310 F.2d 107 (10th Cir. 1962); Givens v. Moll, 177 F.2d 765 (5th Cir. 1949)
 
 
 [16]
 Whether the complaint states a cause of action on which relief can be granted is a question of law and, just as issues of fact, it must be decided after and not before the court has assumed jurisdiction over the controversy. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, 13 A.L.R.2d 383; Midwest Development, Inc. v. City of Tulsa, Oklahoma, 333 F.2d 1009 (10th Cir. 1964), cert. den. 379 U.S. 989, 85 S.Ct. 702, 13 L.Ed.2d 610
 
 
 [17]
 Alzua v. Johnson, 231 U.S. 106, 34 S.Ct. 27, 58 L.Ed. 142 (1913); O'Bryan v. Chandler, 352 F.2d 987 (10th Cir. 1965); Kostal v. Stoner, 292 F.2d 492 (10th Cir. 1961); Ryan v. Scoggin, 245 F.2d 54 (10th Cir. 1947); Bottone v. Lindsley, 170 F.2d 705 (10th Cir. 1948), cert. den. 336 U.S. 944, 69 S.Ct. 810, 93 L.Ed. 1101, supra; Haldane v. Chagnon, 345 F.2d 601 (9th Cir. 1965); Givens v. Moll, 177 F.2d 765 (5th Cir. 1949)
 
 
 [18]
 Anno. Federal Jurisdiction — Probate Matters, 158 A.L.R. 9; O'Callaghan v. O'Brien, 199 U.S. 89, 25 S.Ct. 727, 50 L. Ed. 101 (1905); Ledbetter v. Taylor, 359 F.2d 760 (10th Cir. 1966); Harris v. Zion's Savings Bank & Trust Co., 317 U.S. 447, 63 S.Ct. 354, 87 L.Ed. 390, reh. den. 318 U.S. 799, 63 S.Ct. 659, 87 L.Ed. 1163, affirming 127 F.2d 1012 (10th Cir. 1942); Spriggs v. Pioneer Carissa Gold Mines, 251 F.2d 61 (10th Cir. 1957); cf. Beach v. Rome Trust Company, 269 F.2d 367 (2d Cir. 1959)