### NORFOLK SOUTHERN R. CO. v. CHATMAN.

(Circuit Court of Appeals, Fourth Circuit. February 18, 1915.)

#### No. 1283.

CARRIERS ☞242, 307—"PASSENGER" FOR HIRE—SHIPPER ACCOMPANYING LIVE STOCK.

A shipper of live stock, who is transported by the carrier on his shipping contract on condition that he feeds and cares for the stock and exempts the carrier from liability for its escape from the car, is not given free transportation, but is a "passenger" for hire, the consideration paid being the service rendered in performing a duty of the carrier, and the latter cannot by a further provision exempt itself from liability for his injury through its negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 980, 1252–1259, 1491; Dec. Dig. ☞242, 307.

For other definitions, see Words and Phrases, First and Second Series, Passenger.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Eastern District of North Carolina, at Elizabeth City; Henry G. Connor, Judge.

Action at law by W. C. Chatman against the Norfolk Southern Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

C. M. Bain, of Norfolk, Va., and J. Kenyon Wilson, of Elizabeth City, N. C. (W. B. Rodman, of Norfolk, Va., on the brief), for plaintiff in error.

P. W. McMullan and Charles Whedbee, both of Hertford, N. C., for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. The plaintiff in error will be hereinafter referred to as defendant, and defendant in error as plaintiff; such being the respective positions the parties occupied in the court below.

In the early part of December, 1911, plaintiff delivered to the Pennsylvania Railroad Company, at Jersey City, N. J., a car load of horses, to be transported over its lines and thence to Hertford, N. C., on the Norfolk Southern Railroad. About 5 o'clock in the afternoon, after the horses were loaded, the man who had the horses loaded for the Pennsylvania Railroad Company delivered to the plaintiff a paper in the following language:

Pennsylvania Railroad Company.

Coupon to Uniform Live Stock Contract No. 872.

120 Jersey City Station, Dec. 1st, 1911.

W. C. Chatman delivered to the Pennsylvania Railroad Company (subject to all the conditions of the uniform live stock contract, executed as of even date herewith and now in the possession of the said company, of which this coupon is part) live stock of the kind and number, and consigned and destined as follows:

17 Consigned W. C. Chatman.
Destination Pt. Norfolk, Va.
For Hertford, N. C.
One chartered car.
Number and description of stock containing (shipper's load and count) nine (9) horses and (1) stud horse and one (1) colt. Released to a valuation of $100.00 each, watered & fed at 12 noon P. M.

W. C. Chatman, Man in Charge.

Weight subject to correction ......
Advances $......
Car Nos. and Initials, Penna. Co. 581461.
Witness his hand and seal the day and year above written.
(Said shipper hereby states that the said animals tendered to the carrier for shipment are not affected with glanders.)

W. C. Chatman, Shipper. [Seal.]

Attest:
    E. Butler,
        Per M. Company's Agent.

After receiving the foregoing paper, the plaintiff got on the car with the horses as caretaker at the direction of the agent of the company, and came down to Cape Charles, Va., and thence across on a barge,

still remaining in the car, to Norfolk, where the car was carried up to the stockyards. The car was delivered to the defendant, the Norfolk Southern Railroad, and hauled to a point near Moyock in the state of North Carolina, when the car in which plaintiff and the horses were riding was derailed on account of the defective condition of the track, rotten ties, etc., and the plaintiff was injured and greatly damaged.

The defendant, for the purposes of this appeal, admits the derailment and the injury, and admits the plaintiff's right to recover judgment set out in the record, unless it can be shown that plaintiff was riding upon said train in violation of the law regulating interstate commerce, or that plaintiff was riding on the train without the authority of the defendant, and was a trespasser, or unless it can show that the plaintiff had assumed all risks of said transportation and released the defendant from any liability for neglect of any kind.

The defendant requested the court to submit the following issues to the jury:

(1) Was the plaintiff injured by the negligence of the defendant while lawfully riding on the defendant's train as a passenger, as alleged in the complaint?

(2) What damages, if any, is the plaintiff entitled to recover for said injury?

(3) Did the plaintiff assume the risks of injury in traveling upon defendant's train and release defendant therefrom?

The court declined to submit these issues, whereupon the plaintiff tendered the following issues, which were submitted:

(1) Was plaintiff injured by the negligence of the defendant as alleged in the complaint?

(2) What damage, if any, is plaintiff entitled to recover?

The jury answered both issues in favor of the plaintiff, and fixed the damages at $1,550, and judgment was entered accordingly, to which judgment defendant excepted, and the case comes here on writ of error.

It is insisted by counsel for defendant that it is not liable to plaintiff for damages, in that plaintiff's contract with the Pennsylvania Railroad is in violation of section 1 of what is known as the Act to Regulate Commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [Comp. St. 1913, § 8563]), and therefore void, that the coupon or pass upon which plaintiff was transported was a gratuity, and that he was not in any sense a passenger for hire. It is further insisted that under these circumstances the company did not owe the plaintiff the duty to exercise the care necessary for his protection from personal injury that it would have, had he been a passenger for hire. Thus it will be seen that the principal question in this controversy is within a narrow compass.

Counsel for plaintiff insists that the transportation issued was for a valuable consideration; that it formed a material part of the contract with the Pennsylvania Railroad under which it agreed to ship the live stock in question. The memorandum in the right-hand corner of the caption, which is as follows, clearly indicates that it was the intention of the parties to the contract that the live stock should be watered and fed regularly by the plaintiff, who was designated as the "man in charge":

F. D. 2660.

Pennsylvania Railroad Company.

No. 872.        Uniform Live Stock Contract.

120 Jersey City Station, Dec. 1st, 1911.

This agreement, made this the 1st day of December, 1911, by and between the Pennsylvania Railroad Company, hereinafter called carrier, and W. C. Chatman, hereinafter called shipper.

Witnesseth, that the said shipper has delivered to the said carrier live stock of the kind and number, and consigned and destined by said shipper, as follows:

| Consignee, Destination, etc. | Number and Description of Stock and Count; Weight, Subject to Correction; Shipper's Load. |
|---|---|
| W. C. Chatman, Port Norfolk, for Hertford, N. C. c/o E. S. D. | One chartered car containing 9 horses, 1 stud, and one (1) colt. Released to a valuation of $100.00 each. Watered and fed by shipper at 12 noon, p. m. W. C. Chatman, man in charge. |

Advance charges $......
Car Nos. and initials Penna. No. 581461.

The contract also contained the following provision:

"That said shipper shall see that all doors and openings in said car or cars are at all times so closed and fastened as to prevent the escape therefrom of any of the said stock, and said carrier or any connecting carrier shall not be liable on account of the escape of any of the said stock from said car or cars."

This provision placed upon the shipper the duty of keeping the openings closed, so as to prevent the escape from the car of any stock shipped, and also contained an exemption from any liability that might occur as a result of failure on the part of the shipper to take the necessary steps to prevent the happening of the things enumerated herein. This, read in connection with the caption, clearly shows that it was to the interest of the carrier from a pecuniary standpoint to have a caretaker in constant attendance from the time the car was loaded and started to its destination until its arrival and the shipment was delivered to the consignee. It would be unreasonable to say that this of itself did not constitute a consideration for the transportation issued to the caretaker.

It should also be borne in mind that section 4386, U. S. Compiled Statutes 1901, p. 2995, prohibits the confinement of cattle, sheep, or other animals transported from one state to another for a longer period than 28 consecutive hours without unloading the same for rest, water, and feeding, unless prevented by storm or other accidental causes; hence the importance of having a caretaker in charge of each shipment of live stock.

The schedule filed with the Interstate Commerce Commission by the company issuing this bill of lading, among other things, contained the following as part of the rule which relates to live stock shipments:

"Free and reduced transportation shall not be issued to shipper or caretaker in charge of live stock shipments whether car loads or less, and such shippers or caretakers shall pay full fare returning."

Section 1 of the Act to Regulate Commerce, to which reference has hereinbefore been made, among other things provides that:

"No common carrier, subject to the provision of this act, shall, from January 1, 1907, directly or indirectly, issue or give any interstate free ticket, free pass, or free transportation for passengers, except * * * to necessary caretakers of live stock, poultry," etc.

It is obvious, from reading the foregoing, that if the transportation issued on this occasion be a pass, as such it is specifically exempted by section 1 of the act.

When we consider this provision of the act it clearly appears that the shipper is not prohibited to issue transportation to caretakers while accompanying stock from point of shipment to destination, and while the first portion of the schedule provides that it shall be unlawful to give free passes or transportation, this proviso is limited by the concluding paragraph, to wit:

"Then such shippers or caretakers shall pay full fare returning."

In other words, this clearly shows that the transportation company recognized the fact that it was its duty to issue transportation to shippers or caretakers while accompanying the stock in consideration of the services thus rendered, while, on the other hand, the proviso indicates that the transportation company thereby sought to relieve itself from issuing free transportation to shippers or caretakers returning.

If it had been the purpose of the transportation company to refuse transportation to shippers or caretakers while accompanying shipments of livestock, it would have been unnecessary to have added a proviso as to the return trip. Therefore we are of opinion that this provision was intended to mean that the transportation granted to the shipper or caretaker while accompanying the stock should not be free and gratuitous, and that while making such trip the caretaker or shipper was to be considered as a passenger for hire, but that no free transportation was to be issued to such shipper or caretaker for the return trip. Therefore, in view of this provision, it cannot be reasonably insisted that the transportation issued to plaintiff on this occasion was free or gratuitous. The Supreme Court of the United States in the Case of New York Central Railroad Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627, in passing on this point said:

"A person traveling on a pass, * * * for the purpose of taking care of his stock on a train, is a passenger for hire."

The following is contained in Cyclopedia of Law and Procedure, vol. 6, page 544:

"Persons are, however, frequently transported on so-called passes who are not in fact gratuitous passengers, because the right to ride without payment of special compensation therefor is given in part consideration of payment which is principally for other services. Thus one who travels on a drover's pass, which is issued in connection with the transportation of live stock for

hire, is not a free passenger, but a passenger for compensation. And those who are carried on freight trains to look after live stock which is being transported, and as an incident to such transportation, are entitled to protection as passengers."

This rule is also announced in the cases of Kirkendall v. Union Pacific Railroad Co., 200 Fed. 197, 118 C. C. A. 383; B. & Q. R. R. v. Williams, 200 Fed. 207, 18 C. C. A. 393.

On the reverse side of the sheet on which this contract is written appears what purports to be a provision relieving the carrier from liability for injuries resulting from the carrier's neglect or otherwise. In the case to which we have referred it was held that such provision was void. The case of Huckstep v. St. Louis & H. Railroad Co., 166 Mo. App. 330, 148 S. W. 988, is to the same effect.

The Supreme Court of Indiana in the case of Louisville & Nashville Railroad Co. v. Faylor, 126 Ind. 126, 25 N. E. 869, said:

"A stipulation that the carrier shall not be bound to the exercise of care and diligence is in effect an agreement to absolve him from one of the essential duties of his employment and it would be subversive of the very object of the law to permit the carrier to exempt himself from liability by a stipulation in his contract with the passenger, that the latter should take the risk of the negligence of the carrier or of his servants. The law would not allow the carrier thus to abandon his obligation to the public, and hence all stipulations which amount to a denial or repudiation of duties which are of the very essence of his employment will be regarded as unreasonable, contrary to public policy, and therefore void."

However, it is insisted by counsel for defendant that the Supreme Court of the United States in the case of Charleston & W. C. R. Co. v. Thompson, 234 U. S. 576, 34 Sup. Ct. 964, 58 L. Ed. 1476, had decided this question in favor of defendant's contention. That case is easily distinguished from the case at bar. There a free pass was issued to a member of the family of an employé without any consideration whatsoever. The Supreme Court held that the pass issued to a member of the family of an employé is free under the provision of the statute which authorized it to be issued, and that:

"The stipulation contained in it is excepted, and the stipulations contained in it and on which it is excepted, including one exempting the company from liability in case of injury, are valid."

The Supreme Court based its opinion upon the theory that the pass was free and gratuitous, and that in no sense of the word could one riding on such a pass be deemed a passenger for hire.

In the case at bar, as we have already stated, the transportation was given in consideration of an agreement on the part of the caretaker that the carrier should not be bound to exercise such care and diligence as would otherwise have been incumbent upon it in order to secure the safe transportation of live stock. By this agreement the carrier relieved itself of the obligation which it owed the public, and it would be manifestly unjust under such circumstances to hold that the stipulation exempting the company from liability is valid, and that the defendant is relieved from liability for the injury which plaintiff sustained.

For the reasons stated, we think the stipulation in this instance, which undertakes to relieve the carrier from liability for injuries resulting from the carrier's negligence and otherwise, is void. It being shown that there was a derailment, under the laws of North Carolina the presumption is that the same was occasioned by the neglect of the railroads. In fact, this proposition does not seem to be seriously controverted by the defendant.

As we have stated, the learned judge who heard this case refused to submit the issues that were tendered by the defendant, and in lieu thereof submitted what we conceive to be the proper issues in view of the evidence.

Being of opinion that the case was fairly and impartially tried, the judgment of the lower court is affirmed.