### WILEY v. GRAND TRUNK RY. OF CANADA.

(District Court, W. D. New York.   October 1, 1915.)

1. CARRIERS ☜316—NEW TRIAL ☜68—INJURIES TO PASSENGERS—VERDICT—CONCLUSIVENESS—NEGLIGENCE.

Where defendant railway company, in an action for personal injuries to a passenger, failed to offer evidence showing freedom from negligence, and the jury found for the plaintiff, the verdict is conclusive on the question of defendant's negligence, since an injurious accident, when the passenger exercises due care, is prima facie evidence of negligence by the carrier.

[Ed. Note.—For other cases see Carriers, Cent. Dig. §§ 1261, 1262, 1283, 1285–1291; Dec. Dig. ☜316; New Trial, Cent. Dig. §§ 135–140; Dec. Dig. ☜68.]

2. CARRIERS ☜242—INJURIES TO PASSENGERS—CARETAKERS OF LIVE STOCK—LIMITATION OF LIABILITY.

Plaintiff, in an action in damages for personal injuries against a railway company, was given his transportation as caretaker for stock on a freight train. Held, that he was not a gratuitous passenger, prior to Act June 29, 1906, c. 3591, 34 Stat. 584, 585, since his fare was a part of the consideration paid for carrying the stock, nor under that chapter, as originally enacted or as amended by Act April 13, 1908, c. 143, 35 Stat. 60, 61, and Act June 18, 1910, c. 309, 36 Stat. 546 (Comp. St. 1913, § 8563), since by that statute caretakers of stock are expressly excepted.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 980; Dec. Dig. ☜242.]

3. CARRIERS ☜307—LIMITATION OF LIABILITY—PLACE OF CONTRACT.

Where live stock is carried under a contract, and plaintiff accompanies it as caretaker, the law of the state in which the contract was made governs the right of a carrier to limit its liability to him, in the absence of federal law on the subject, regardless of whether the shipment is interstate or not, since the contract is a single one, and the performance a continuous act.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1252–1259, 1491; Dec. Dig. ☜307.]

4. CARRIERS ☜307—DUTIES—LIMITATION OF LIABILITY—REASONABLENESS.

A carrier of passengers cannot limit its liability, even with the consent of its customers, against its own negligence, since it has special duties towards its passengers, and any limitation must be reasonable, run-

ning only against accidents without negligence on the part of the company.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1252–1259, 1491; Dec. Dig. ⊜⎯307.]

At Law. Action by Edward W. Wiley against the Grand Trunk Railway of Canada. Plaintiff was awarded a verdict of $3,500, and defendant moves to set the verdict aside and grant a new trial. Motion denied.

Thomas A. Sullivan, of Buffalo, N. Y., for plaintiff.

John W. Ryan, of Buffalo, N. Y., for defendant.

THOMAS, District Judge. The plaintiff sued to recover damages for personal injuries. The jury awarded him $3,500. This is a motion to set that verdict aside and grant a new trial.

The facts involve the liability of an interstate railway carrier under the anti-pass provisions of the Hepburn Act for personal injuries sustained, through the carrier's negligence, by a plaintiff who was injured while traveling on a drover's pass in the care of live stock. The jurisdiction of this court is founded on diversity of citizenship; the plaintiff being a resident and citizen of the state of New York, and the defendant a Canadian corporation, doing business in this district and operating lines of railway in Canada, New York, and New England.

The injuries were sustained at or near Ridgeway, in Canada, on one of the defendant's lines, in a head-on collision between two trains being run in opposite directions on the same track while under the care, management, and control of the defendant's servants and agents; the plaintiff being, at the time of the collision, in the caboose of one of the colliding trains, in charge of a car of live stock which had been shipped from Bad Axe, in the state of Michigan, on the line of the Pere Marquette Railroad, to Buffalo, over the defendant's railway as a connecting line, and forming with its connecting lines an interstate railway route.

The plaintiff's transportation was furnished on a drover's pass issued in Michigan, by the Pere Marquette railroad, where the carriage was begun and the shipment was received. At the time of the shipment,. the Pere Marquette Railroad issued a through bill of lading, which was signed by the plaintiff and the agent of that railroad company in which the plaintiff was furnished transportation from Bad Axe to Buffalo as a necessary caretaker of the live stock included in the bill of lading; the plaintiff at the same time purporting to release the railroads over which he was to travel from any liability for personal injuries sustained by the former through the latter's negligence.

[1] The only evidence offered by the plaintiff on the trial of the issues of fact raised by the pleadings was concerning the collision itself, the nature and extent of the injuries sustained, and other facts tending to prove the amount of damages. No evidence was offered by the defendant tending to show freedom from negligence on its part. As it is now settled law in the federal courts that the happening of an injurious accident is, in passenger cases, where the passenger is in the

exercise of due care, prima facie evidence of negligence on the part of the carrier, and that the burden then rests on the defendant to show that its whole duty was performed, and that the injury was unavoidable by human foresight (Gleeson v. Virginia Midland R'd Co., 140 U. S. 435, 443, 11 Sup. Ct. 859, 35 L. Ed. 458, and cases there cited), the verdict must be taken to be conclusive of the defendant's negligence as alleged in the complaint.

[2] Therefore the only issue raised by this motion is the validity of the release. If the plaintiff had been a gratuitous passenger, there is no doubt but that, under the decisions of the United States Supreme Court, the release would have been valid in the federal courts, in the absence of willful or wanton negligence, irrespective of the Hepburn Act. Northern Pacific Railway Co. v. Adams, 192 U. S. 440, 24 Sup. Ct. 408, 48 L. Ed. 513; Boering v. Chesapeake Beach Ry. Co., 193 U. S. 442, 24 Sup. Ct. 515, 48 L. Ed. 742. But the plaintiff would not have been a gratuitous passenger prior to the Hepburn Act, for the reason that the right to ride without special compensation was given in part consideration of the payment which was principally for other services; and although the plaintiff was being carried on a freight train at the time he sustained the injuries, he would, nevertheless, have been a passenger for hire, and entitled to protection as such, as incidental to the carriage of the stock under his care. Railroad Co. v. Lockwood, 17 Wall. 357, 368, 21 L. Ed. 627; Railway Co. v. Stevens, 95 U. S. 655, 24 L. Ed. 535; Norfolk Southern R. Co. v. Chatman, 222 Fed. 802, —— C. C. A. ——. Hence we are brought to the vital question involved in this motion.

Has Congress, by the Hepburn Act, so called, regulated the invalidity of such a release as is this, to the exclusion of the law of the state? In my judgment it has not. The release does not offend either the letter or spirit of the interstate commerce legislation of Congress. The fourth paragraph of section 1 of the "Act to regulate commerce," as amended June 29, 1906, and in effect January 1, 1907 (chapter 3591, 34 Stat. 584, 585), especially excepts from the anti-pass provisions of the law "necessary caretakers of live stock," and this provision is not varied or affected by the subsequent amendments of April 13, 1908 (chapter 143, 35 Stat. 60, 61), and June 18, 1910 (chapter 309, 36 Stat. 546). This view of the statute is confirmed by a very recent decision of the Circuit Court of Appeals for the Fourth Circuit in Norfolk Southern R. Co. v. Chatman, 222 Fed. 802, —— C. C. A. ——, supra. That case involved substantially the same facts as exist here, in which it was held that a caretaker of live stock, who was transported on his shipping contract, did not come within the statute in question, but was a passenger for hire, and that a release similar to the one herein issued was invalid.

[3] The plaintiff's right to safe carriage and the question whether the relation of passenger and carrier exists in the absence of any federal statute regulating the matter are therefore matters of state law. Southern Pacific Co. v. Schuyler, 227 U. S. 601, 33 Sup. Ct. 277, 57 L. Ed. 662, 43 L. R. A. (N. S.) 901. So that the ultimate question is: What is the state law which influences the validity or invalidity of the

release? The weight of authority, including the United States Supreme Court and the Circuit Court of Appeals for the Second Circuit, is that the invalidity of a release like this is to be determined by the law of the jurisdiction where the carriage was commenced—locus celebrationis—whether the basis of the carrier's liability be regarded as contractual or tortious. The general rule that the nature, the obligation, and the interpretation of a contract are to be governed by the law of the place where it is made, unless the parties at the time of making it have some other law in view, requires a contract of carriage, made in one country, and the performance of which begins there, to be governed by the law of that country, unless the parties, when entering into the contract, clearly manifest a mutual intention that it shall be governed by the law of some other country. The contract in such cases is single, and the performance is one continuous act. Davis v. Chicago, Milwaukee & St. Paul Ry. Co., 93 Wis. 470, 67 N. W. 16, 1132, 33 L. R. A. 654, 57 Am. St. Rep. 935; Brockway v. American Express Co., 168 Mass. 257, 47 N. E. 87; Brockway v. American Express Co., 171 Mass. 159, 50 N. E. 626; Hale v. N. J. Steam Navigation Co., 15 Conn. 539, 39 Am. Dec. 398; Dyke v. Erie Ry. Co., 45 N. Y. 113, 117, 6 Am. Rep. 43; Fish v. Delaware, Lackawanna & Western R. R. Co., 211 N. Y. 374, 105 N. E. 661; Liverpool Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788; The Majestic, 60 Fed. 624, 9 C. C. A. 161, 23 L. R. A. 746 (C. C. A. 2d Cir.). Although The Majestic, supra, was reversed on a writ of certiorari by the Supreme Court (166 U. S. 375, 17 Sup. Ct. 597, 41 L. Ed. 1039), the ground of reversal did not involve the principle stated by Judge Shipman, who delivered the opinion of the Circuit Court of Appeals, that a written agreement, executed and delivered in England, whereby an English corporation agrees to transport a citizen of the United States from England to this country, is to be construed according to the English law; the reversal being based on the proposition that the "conditions" printed on the back of the ticket were notices, and nothing more, and could not be held as a matter of law, whether they were regulations for the conduct of business or limitations upon common-law obligations, to constitute any part of the contract.

[4] By the common law as administered by the court of last resort in the state of Michigan (Weaver v. Ann Arbor R. Co., 139 Mich. 590, 102 N. W. 1037, 5 Ann. Cas. 764, and Eberts v. Detroit, Mt. Clemens & Marine City Ry., 151 Mich. 260, 115 N. W. 43) and by the Supreme Court of the United States (Railroad Co. v. Lockwood and Railway Co. v. Stevens, supra) and which latter rulings of the Supreme Court are obligatory on this court as a matter of general commercial law, the release was invalid. These cases lay down, as the test applicable to every limitation of the common-law liability of a carrier of passengers, its just and reasonable character, and they are rested upon the principle that common carriers of passengers have special duties to discharge, from which they are not able to exonerate themselves, even with the consent of their customers, and that special contracts made by them with their customers are good and valid only

to the extent of excusing them, for example, for all losses happening from accident without any negligence or fraud on their part, but that an exemption from liability for negligence is repugnant to the public good, to the Constitution, and therefore inoperative.

This view of the law dispenses with any consideration of the Canadian law, which has been discussed at length by counsel.

The motion to set aside the verdict is denied.