## NEVILL v. GULF, C. & S. F. RY. CO.
### (No. 354–3096.)

(Commission of Appeals of Texas, Section A. Nov. 15, 1922.)

**1. Commerce ⬤⇒5—Congress empowered to regulate interstate transportation.**

Congress may regulate interstate transportation, and in the exercise of such power may declare when a person so transported has the status of a passenger, and may prescribe the force and effect of provisions in a contract of carriage limiting or denying liability for personal injuries received by such person in the course of such transportation.

**2. Commerce ⬤⇒10—State law governs as to rights of persons receiving interstate transportation in absence of federal statute.**

In the absence of a federal statute, the status of a person receiving interstate transportation is defined, and the liability of the carrier to him for injuries sustained in the course of such transportation is regulated by the local or state law.

**3. Carriers ⬤⇒234 — Contract for interstate carriage construed by law of state in which made unless controlled by federal law.**

Ordinarily a contract for interstate carriage, except in so far as it may be controlled by the federal law, is to be construed by the laws of the state in which it is made.

**4. Evidence ⬤⇒80(I)—Laws of other state presumed same as laws of state in which action was brought, in absence of proof to contrary.**

Laws of other states are presumed to be the same as the laws of the state in which the action was brought in the absence of proof to the contrary.

**5. Courts ⬤⇒89—Liability of railroad for injuries to news agent not paying fare under contract exempting railroad from liability governed by state law in absence of federal law.**

In action against a railroad for injuries to a news agent riding on defendant's train without paying fare, under contract with the railroad and his employer involving validity of the news agent's contract exempting railroad from liability for injuries, the court will be governed by the decisions of the state Supreme Court as against the decisions of the United States Supreme Court, there being no legislation by Congress affecting such issues, notwithstanding Interstate Act as amended (U. S. Comp. St. § 8604a).

**6. Carriers ⬤⇒241—News agent riding on train without payment of fare held "passenger."**

A news agent riding on train under contract between the railroad and his employer entitling news agent to ride on train without payment of the fare *held* a passenger within the rule making void contracts attempting to exempt carrier from liability to passenger for injuries resulting from its negligence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Passenger.]

**7. Carriers ⬤⇒307(I)—Contract attempting to exempt carrier from liability for negligence causing injury to passenger held void.**

Provision of a contract attempting to exempt a carrier from liability to a passenger for injuries resulting from its negligence *held* void.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by Gid D. Nevill against the Gulf, Colorado & Santa Fé Railway Company. Judgment for defendant was affirmed by the Court of Civil Appeals (187 S. W. 388), and plaintiff brings error. Reversed and remanded.

Johnson & Harrell, of Cleburne, and S. C. Padelford, of Fort Worth, for plaintiff in error.

Brown & Lockett, of Cleburne, and Lee & Lomax, of Fort Worth, for defendant in error.

GALLAGHER, J. Gid D. Nevill, plaintiff in error, was plaintiff, and the Gulf, Colorado & Santa Fé Railway Company, defendant in error, was defendant, in the trial court, and they will be so designated in this court.

Plaintiff instituted this suit to recover damages for personal injuries which he alleged he sustained while a passenger on one of defendant's trains. He alleged that the injuries suffered by him were the direct and proximate result of negligence on the part of the defendant, its agents and employees in charge of said train in failing to protect him from an assault by one Mullins, a passenger on said train. There was a trial before a jury. The court, after hearing the evidence, gave a peremptory charge in the following terms:

"The court instructs you to return a verdict in this case in favor of the defendant, the Gulf, Colorado & Santa Fé Railway Company. The court gives this instruction for two reasons: (1) Because the evidence in this case fails to show any liability on the part of the defendant; and (2) if there was any evidence of the defendant's liability, the case of Northern Pacific v. Adams, 192 U. S. 440, 24 Sup. Ct. 408, 48 L. Ed. 513, holds that (under) the plaintiff's contract with the news company agrees (agreeing) to relieve said news company and the railroad upon which plaintiff was allowed free of paying any fare, that plaintiff would assume the risk of any injury occurring to him, and under said decision plaintiff cannot recover in this case."

The jury returned a verdict for defendant in response to such charge, and the court rendered judgment thereon. Plaintiff appealed, and the Court of Civil Appeals, one of the Justices dissenting, affirmed the judgment. 187 S. W. 388. The Supreme Court granted a writ of error, and referred the case to this court for consideration and report.

The Fred Harvey News Agency was operating under a contract made by Fred Harvey with defendant, by which he agreed to manage and operate all the railroad hotels, eating houses, and lunch stands on the line of said railway, to manage and operate all dining cars attached to trains operated thereon, to conduct and carry on the business of selling in said hotels, eating houses, and lunch stands upon the trains and in and about the stations of said railway curios, newspapers, books, periodicals, fruits, candies, cigars, and such other articles as are customarily sold by news agents upon trains and at railway news stands. This contract specified in detail, what service, supplies, and facilities should be furnished by defendant, and what service, supplies, and facilities should be furnished by said Fred Harvey. It further provided that defendant should transport free all goods, supplies, and employees required in the conduct of said business. It also provided that all damages, liabilities, costs, and expenses of the said Fred Harvey resulting from personal injuries to employees while engaged in the news business thereunder should be treated as expense of operating the business, and paid out of the proceeds thereof, but that, if the proceeds of all the business contemplated by said agreement should be insufficient to pay the same, defendant should assume and be liable for such excess. It also provided that defendant should indemnify and save said Fred Harvey harmless against all claims of damages to persons employed in the hotels, eating houses, or dining cars branch of the business arising from the negligence of defendant. There was nothing in this contract attempting to define the status of the employees of the news agency while receiving free transportation from the defendant, nor attempting to exempt defendant from liability for personal injuries which such employees might sustain as the result of its negligence or the negligence of its agents or employees. Said contract further provided that out of the net results from said business said Fred Harvey should first retain the sum of $40,000; that defendant should then receive the sum of $40,000, and that the remainder, if any, should be equally divided between said Fred Harvey and defendant.

Plaintiff was employed as a news agent by said news service on November 9, 1912. In connection with his employment, he, at Fort Worth, Texas, executed and delivered to said news agency, what is termed his personal release. This instrument recited that the said Fred Harvey, under contract with certain railway companies, including the defendant herein, was operating a news business on said railroads, and that plaintiff had been named as a news agent upon condition of executing the same, and stipulated: (a) That in consideration thereof he assumed all risk of accident and injuries of every kind which he might sustain in the course of his employment, or which might accrue to him on any of said railroads upon which he might be by virtue of his employment, whether resulting from gross or any other negligence of any person or corporation; (b) that neither said Fred Harvey, its successors or assigns in business, nor any such railroad company should be held liable for damages on account of any such injuries; (c) that he would indemnify said Fred Harvey, its successors and assigns from all claims by any person or corporation arising out of any claim or recovery by him for any such damage; (d) that in case of any such injury he would at once execute and deliver to the person or corporation operating such railway a full release of all claims and demands arising out of, connected with, or resulting from such injuries; (e) that he ratified all agreements by said Harvey with any person or corporation operating any railroad in which it had agreed that its employees should have no cause of action for injuries sustained in course of their employment upon the line of such contracting party; (f) that he agreed to be bound by each and every such agreement as though a party thereto; (g) that he authorized said Fred Harvey to contract in his behalf with any person or corporation operating any railroad for his transportation as news agent free of charge upon condition and consideration that he would make no claim for compensation for any such injury sustained by him; (h) that the provisions of such agreement should be held to inure to the benefit of every person or corporation upon whose railroad said Fred Harvey should carry on such news agency.

Under his said employment, plaintiff at the time of his injuries was acting as news agent on one of defendant's trains running from Fort Worth, Tex., through the state of Oklahoma to Newton, Kan. Plaintiff testified that, while offering his wares for sale to the passengers on said train, one of said passengers by the name of Mullins, without cause or provocation, became angered at him, and grabbed him by the sleeve, and shook him, and said, "Get out of here, and don't you come back in here any more. I had trouble once with —— of a news agent, and if you come back in here after we cross Red River I will throw you out of the window." He further testified said Mullins was drunk, and that he immediately notified the conductor of that fact, and of the threats made against him by said Mullins, and that he told the conductor that he was afraid of the man. He further testified that the conductor said he knew this man; that it was old Mullins; that he was drunk, and for plaintiff to go back and work the train. The plaintiff testified this occurred in the state of Texas, and that after they passed Red River, and while

they were in the state of Oklahoma, said Mullins, without provocation, assaulted him and inflicted the injuries complained of.

The Court of Civil Appeals held that the testimony in the case presented an issue of negligence on the part of the conductor, which, if plaintiff was a passenger, should have been submitted to the jury, but further held, one of the justices dissenting, that, inasmuch as plaintiff was on an interstate trip at the time whether he, was in fact a passenger, and entitled to recover as such, was to be determined by the provisions of the federal law, and further held on authority of B. & O. S. W. Ry. Co. v. Voigt, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560, and Robinson v. B. & O. Ry. Co., 237 U. S. 84, 35 Sup. Ct. 491, 59 L. Ed. 849, that plaintiff was not a passenger.

[1, 2] Congress unquestionably has ample power and authority to regulate interstate transportation, and in the exercise of such power to declare when a person so ,transported has the status of a passenger, and the force and effect of provisions in the contract of carriage limiting or denying liability for personal injuries received by such person in the course of such transportation. In the absence of legislation by Congress on that particular subject the status of a person receiving interstate transportation is defined, and the liability of the carrier to him for injuries sustained in the course of such transportation is regulated by the local or state law. Except as controlled by some act of Congress, carriers and all persons doing business with them within the territorial jurisdiction of a state are subject to its laws, and it makes no difference whether such laws are statutory or whether they are declared and enforced by its courts. Such laws are not in themselves regulations of interstate commerce or transportation, although they may in some degree control the duties and liabilities of those engaged therein. So long as Congress has not legislated on the particular subject, they are rather to be regarded as in aid of such commerce, and as a rightful exercise of the police power of the state to regulate the relative rights and duties of all persons and corporations within its limits. Chicago, M. & St. Paul R. Co. v. Solan, 169 U. S. 133, 137, 138, 18 Sup. Ct. 289, 42 L. Ed. 688, 692; Pennsylvania R. Co. v. Hughes, 191 U. S. 477, 491, 24 Sup. Ct. 132, 48 L. Ed. 268, 273; Adams Express Co. v. Croninger, 226 U. S. 491, 500, 501, 33 Sup. Ct. 148, 57 L. Ed. 314, 317, 318, 44 L. R. A. (N. S.) 257.

Legislation by Congress, to be effective to supersede and nullify the laws of a state, must be, however, on the particular subject out of which the cause of action asserted arose. Congress in 1887 passed a general law on the subject of interstate commerce, regulating in many particulars interstate carriage of persons and property. 24 Stat. c. 104, p. 379 (U. S. Comp. St. § 8563 et seq.) This act did not in any way purport to deal with the liability of the individual shipper for injury to or loss of interstate shipments while in the hands of the initial or connecting carriers. After this act took effect a horse was shipped from New York into the state of Pennsylvania. The bill of lading stipulated that neither the original nor any connecting carrier should be liable for the loss of said horse, by negligence or otherwise, in excess of the sum of $100, the agreed valuation of said horse as recited therein. The horse was safely transported into the state of Pennsylvania, and while there in the hands of a connecting carrier was injured as a result of the negligence of such carrier. The shipper sued in the courts of the state of Pennsylvania, and recovered judgment in the sum of $10,000, which was affirmed by the Supreme Court of that state. The carrier claimed that the court, in refusing to limit the recovery to the sum of $100, as stipulated in the bill of lading, denied it a right or privilege secured by said interstate commerce act, and on that ground carried the case to the Supreme Court of the United States on writ of error. That court, in deciding the case, recited the various provisions of the interstate commerce law in force at the time, and held that none of them regulated the particular matter in controversy, and that therefore the law of the state of Pennsylvania, where the injury was inflicted, controlled, and, because its laws declared the stipulation in the bill of lading limiting liability invalid, that court affirmed the judgment of the state court. Pennsylvania R. Co. v. Hughes, 191 U. S. 477, 484–491, 24 Sup. Ct. 132, 48 L. Ed. 268, 270, 273.

Congress in 1906 materially amended the interstate commerce law by what is generally known as the Carmack Amendment. 34 Stat. p. 584 (U. S. Comp. St. §§ 8604a, 8604aa). This amendment dealt directly with the carrier's liability or obligation under interstate contracts of shipment. It required the initial carrier in every case of interstate shipment to issue a bill of lading and made such initial carrier liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any connecting carrier, and declared that no contract, receipt, rule, or regulation should exempt such carrier from the liability thereby imposed. Construing this amendment, the Supreme Court of United States held that it covered almost every detail of the subject of the carrier's liability on interstate shipments so completely that there could be no rational doubt but that Congress intended to take possession of the entire subject of liability and supersede all state regulations with reference to it. Applying this construction of the amendment to the case then under consideration, the court held that the validity

of a stipulation in an interstate shipment limiting the liability of an express company in case of loss to the value of the property, as recited therein, was to be determined by the decisions of the federal courts. The federal courts, at and prior to that time, held in cases within their original jurisdiction that such stipulations were valid. The court applied this rule to the interstate shipment under consideration, and held the stipulation valid, and reversed the judgment of the state court. Adams Express Co. v. Croninger, 226 U..S. 491, 505–513, 33 Sup. Ct. 148, 57 L. Ed. 314, 319–323, 44 L. R. A. (N. S.) 257. Shortly thereafter the act was further amended by Congress so as to cover this issue in express terms. 38 Stat. p. 1196.

The act of 1887 contained a number of specific provisions relating to interstate transportation of passengers. These provisions were amplified by the amendment of 1906, and a provision added that no carrier subject to the act should directly or indirectly issue or give any interstate free ticket, free pass, or free transportation for passengers except to certain classes of persons, among whom "news boys on trains" are included. There is nothing anywhere in either the original act or the amendment thereto purporting to deal with the status of "news boys on trains" with reference to being or not being passengers while so transported, nor purporting to deal with the liability of the carrier for personal injury resulting to them from its negligence.

The provisions of said amendment prohibiting free transportation, except in such specified cases, came before the Supreme Court of the United States for construction shortly after it took effect. Schuyler, a railway mail clerk, was permitted to ride free on an interstate journey made not in his capacity as such, but for purely personal purposes. Railway mail service employees constitute one of the classes which interstate carriers are permitted to carry free by the terms of said act. Schuyler was killed by the derailment of the train on which he was riding while in the state of Utah. His wife and children sued the railway for damages resulting from his death. They recovered a judgment which was affirmed by the Supreme Court of Utah. The case was carried to the Supreme Court of United States on writ of error. That court held that whether under the Interstate Commerce Act the railway company was prohibited from giving free interstate transportation to employees of the railway mail service when not on duty, but traveling for their own pleasure or profit, was a federal question, but, even if this were so, whether the relation of carrier and passenger arose in such case was a question not of federal, but of state, law. That court further held that the deceased, who in good faith and with the consent of the railway company accepted free interstate transpor-

tation, did not forfeit his right to the benefit of the laws of the state making the carrier liable for injuries to gratuitous passengers, even if his carriage were prohibited by the Interstate Commerce Act. So holding, that court affirmed the judgment of the Supreme Court of the state of Utah. Southern Pacific Co. v. Schuyler, 227 U. S. 601, 609–613, 33 Sup. Ct. 277, 57 L. Ed. 662, 668–670, 43 L. R. A. (N. S.) 901. The state law was held applicable in determining the liability of the carrier for injuries received in interstate transportation in the case of Wiley v. Grand Trunk Railway of Canada (D. C.) 227 Fed. 127, and Eubanks v. Southern Railway Co. (D. C.) 244 Fed. 891.

The case of Railway v. Adams, supra, on which the trial court based its peremptory charge in this case, and the cases of Railway v. Voigt, supra, and Robinson v. Railway, supra, upon which the Court of Civil Appeals affirmed the judgment of the trial court, all by the Supreme Court of United States, were not decided on the provisions of the Interstate Commerce Act or any other legislation by Congress. They were decided upon principles of general jurisprudence accepted and applied by the federal courts in the exercise of their original jurisdiction, and in the absence of a valid law of the state where the cause of action arose, to the contrary. None of them involved a review of the judgment of a state court of last resort on the ground that a federal question was involved.

The case of Wells Fargo & Co. v. Taylor, 254 U. S. 175, 41 Sup. Ct. 93, 65 L. Ed. 205, is cited by defendant as involving the identical issue here under consideration. We do not think so. That suit was brought by the express company in the District Court of the United States for the Northern District of Mississippi on the ground of diverse citizenship to enjoin Taylor from collecting a judgment recovered by him in a court of that state against a railroad for personal injuries received by him while performing his duties as a messenger in the employ of the express company. The grounds on which Taylor recovered judgment against the railroad in the state court are not set out, and the validity of his judgment against it which was affirmed by the Supreme Court of that state without written opinion was not put in issue. The express company had agreed with the railroad company to assume all risk for damages to its employees, and to hold the railroad company harmless therefrom. Taylor, in his contract of employment with the express company, had ratified this agreement, and assumed all the risks of his employment. In defense of the suit of the express company it was contended by Taylor that said express company was a "common carrier by railroad" within the meaning of the Employers' Liability Act of April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. §§ 8657 –8665), and that his agreement with it was

void under section 5 of that act. The Supreme Court held that the express company was not a common carrier by railroad within the meaning of that act. It further held that there was no statute regulating the validity of Taylor's contract with the express company, and that it was binding under the rules of decision adopted in such cases by that court.

The case of Charleston & W. C. R. Co. v. Thompson, 234 U. S. 576, 34 Sup. Ct. 964, 58 L. Ed. 1476, is cited by defendant as being decisive of the issue under consideration. Mrs. Thompson was injured while on an interstate trip traveling on a free pass issued to her as the wife of an employee of the railroad company. Wives of employees belong to one of the excepted classes to which free transportation may be issued under the provisions of the Carmack Amendment. The pass, by its terms, exempted the railway company from damages for such injuries. The stipulation was valid under the laws of Georgia, where the injury was received, and where suit to recover damages was brought. Mrs. Thompson recovered judgment in the trial court, and the railway company carried the case to the Court of Appeals of that state. That court held that the stipulation exempting the company from liability for damages was valid under the laws of that state, but that the railway company was liable under the provisions of said Carmack Amendment; the theory upon which such holding was based being that the pass was not free, but that it was supported by a consideration arising out of the services of the employee on whose account it was granted. The Supreme Court of the United States granted a writ of error, and held that the pass was free, and not supported by any consideration of services on the part of the employee of the railway company, and that there was no question of the validity of its stipulations, citing as authority for such holding Railway Co. v. Adams, supra, and Boering v. Railway, 193 U. S. 442, 24 Sup. Ct. 515, 48 L. Ed. 742. We have already shown that the decision of the case of Railway Co. v. Adams was not based on the provisions of the interstate commerce law or any other act of Congress. Boering v. Railway, the other case cited, does not purport to be based on any such law, nor does it even affirmatively appear that the injury occurred on an interstate journey. The case originated in the courts of the District of Columbia, and the rules of decision adopted by the federal courts, of course, applied. The cause of action asserted in Santa Fé Ry. Co. v. Grant Bros., 228 U. S. 177, 33 Sup. Ct. 474, 57 L. Ed. 787, cited and relied on by defendant, arose in the territory of Arizona. There was no contention that interstate commerce was in any way involved. There was no reference to any local law attempting to define the rights of the parties. The Supreme Court of United States had general appellate jurisdiction of the final judgment rendered in said cause by the Supreme Court of the territory of Arizona by virtue of U. S. R. S. § 1909, in force at that time, independent of any federal question. Its decision in the case was not based on any legislation by Congress, but on its own construction and application of general principles of law.

The plaintiff and defendant in this case are both citizens of the state of Texas. The contract was made, and was to be, at least in part, performed in this state. According to plaintiff's testimony, the altercation which finally resulted in the injuries complained of was begun, the conductor of defendant's train advised thereof, and his advice and control of the situation invoked in this state.

[3, 4] Ordinarily a contract for interstate carriage, except as it may be controlled by federal law, is to be construed by the laws of the state in which it is made. G. H. & S. A. Ry. Co. v. Wiseman (Tex. Civ. App.) 136 S. W. 793, 797 (writ refused); El Paso & N. E. Ry. Co. v. Sawyer, 54 Tex. Civ. App. 387, 119 S. W. 110 (writ refused). This principle has been applied in suits to recover damages for injuries received beyond the borders of the state in which the contract was made. El Paso & N. E. Ry. Co. v. Sawyer, supra; Mexican National R. Co. v. Jackson, 118 Fed. 549, 55 C. C. A. 315; Eubanks v. Southern Railway Co. (D. C.) 244 Fed. 891. We are of the opinion, however, that the fact that the altercation in question did not result in physical injury to plaintiff until after he had crossed Red River and entered the state of Oklahoma is of no importance in this case, because there was neither allegation nor proof of the laws of Oklahoma, and they are therefore presumed to be the same as the laws of this state. Burgess v. W. U. Tel. Co., 92 Tex. 125, 127, 46 S. W. 794, 71 Am. St. Rep. 833; Tempel v. Dodge, 89 Tex. 69, 71, 32 S. W. 514, 33 S. W. 222.

[5] There being no legislation by Congress affecting the issues in this case, it is not incumbent on this court to follow the holdings of the Supreme Court of United States in conflict with the holdings of our own Supreme Court made in construing and applying the Constitution and laws of this state. We think the issue of the liability, if any, of defendant to plaintiff under the facts of this case is to be determined by the law as declared by the Supreme Court of this state. Brass v. T. & Ft. S. Ry. Co., 110 Tex. 281, 284, 285, 218 S. W. 1040; Mexico Northwestern Ry. Co. v. Williams (Tex. Com. App.) 229 S. W. 476, 478.

[6, 7] Our Supreme Court has held that the relation of carrier and passenger exists in this state in every case in which the carrier receives and agrees to transport another not in its employ, whether by contract between them or between the carrier and some other

person by whom the person to be transported is employed, and that it is immaterial how or by whom the carrier is compensated therefor, or whether compensated at all, and that contracts attempting to exempt such carrier from liability to such passenger for injuries resulting from its negligence or the negligence of its agents or employees are void. G. C. & S. F. Ry. Co. v. Wilson, 79 Tex. 371, 375, 15 S. W. 280, 11 L. R. A. 486, 23 Am. St. Rep. 345; G., C. & S. F. Ry. Co. v. McGown, 65 Tex. 640; Missouri Pacific Ry. Co. v. Ivy, 71 Tex. 409, 411–416, 9 S. W. 346, 1 A. L. R. 500, 10 Am. St. Rep. 758; M., K. & T. Ry. Co. of Texas v. Blalack, 105 Tex. 296, 147 S. W. 559.

The holding of our Supreme Court set out above was followed and applied by the Court of Civil Appeals at Fort Worth in sustaining a judgment in favor of a newsboy in an action for damages for injuries received by him as a result of the negligence of the railway in the case of Texas & Pacific Ry. Co. v. Fenwick, 34 Tex. Civ. App. 222, 78 S. W. 548, in which case a writ of error was refused. It follows that the Court of Civil Appeals erred in affirming the judgment of the trial court on the ground stated in the opinion of that court.

In view of another trial, we will not discuss the evidence further than to say that we agree with the holding of the Court of Civil Appeals that the evidence introduced required the court to submit the issue of negligence to the jury.

We therefore recommend that the judgments of the trial court and the Court of Civil Appeals be both reversed, and that the cause be remanded to the district court for another trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.